In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1204

Lisa A. Smith,

Plaintiff-Appellant,

v.

American Arbitration Association, Inc.
 and Argenbright, Inc.,

Defendants-Appellees,

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 7368--John F. Grady, Judge.

Argued September 22, 2000--Decided September 25, 2000
Opinion December 1, 2000


 Before Posner, Manion, and Evans, Circuit Judges.

 Posner, Circuit Judge. The plaintiff appeals from
the dismissal under Fed. R. Civ. P. 12(b)(6) of
her far-ranging challenge to standard arbitration
procedure. She had made a contract to sell
defendant Argenbright her controlling interest in
the PIMMS Corporation for some $65 million. The
contract provided that disputes under it would be
resolved by arbitration in Chicago "in accordance
with the rules and regulations of the American
Arbitration Association" and that the contract
was to be construed in accordance with the law of
Minnesota, where PIMMS was located. Shortly after
the sale, Argenbright gave notice to Smith that
it believed that she had exaggerated PIMMS's
revenue potential, that the exaggeration
constituted a breach of warranty, that
Argenbright had sustained damages of $14 million,
and that it wanted to arbitrate the claim. It
filed the claim with the American Arbitration
Association's Chicago office, which responded by
sending the parties a list of 15 arbitrators
taken from the Association's roster for "Large
and Complex Commercial Cases." The list contained
14 men and one woman. Pursuant to the
Association's rules, the parties were asked to
strike the names of any of the persons on the
list whom they did not want to have on the
arbitration panel and to rank the remaining ones.
One of the names struck by Argenbright was that
of the woman on the list (whom Smith had listed
as her first choice), and as a result a panel of
three male arbitrators was selected--whereupon

Smith brought this suit in federal district court against Argenbright and the Association, complaining primarily that the lack of gender diversity of the list, coupled with Argenbright's action in excluding the only woman on it, was a breach of contract. Federal jurisdiction is thus based primarily on diversity of citizenship, see Caudle v. American Arbitration Ass'n, No. 00-1423, 2000 WL 1528950, at *1 (7th Cir. Oct. 17, 2000), but there is also a federal claim, that the defendants have denied the plaintiff the equal protection of the laws. The parties do not discuss which state's law governs the state-law claim against the AAA, as distinct from Smith's claim against Argenbright, but imply by their citations that it is Illinois law. Curiously, the Association, although served, filed no appearance in either the district court or this court. That was taking a chance.

The district court rebuffed Smith's effort to obtain a preliminary injunction against the arbitration and so the arbitration went forward before the all-male panel. The court then dismissed Smith's suit for failure to state a claim. Her appeal asks us to order the arbitration rerun before a new panel that contains at least one woman. Shortly before the appeal was argued to us, the trial phase of the arbitration ended and the arbitrators announced that they would issue their decision shortly. (We have not been told whether they have yet done so.) Lest the pendency of the appeal influence the arbitration in any way, we accelerated our consideration and issued an order affirming the district court with a notation that the opinion would follow. This is the opinion.

Smith expresses concern that because she is a woman and her opponent is a corporation presumably controlled by men (though there is no allegation to that effect), an all-male panel will be unsympathetic to her. No effort to substantiate the suggestion that male judges or arbitrators are prejudiced against wealthy women who have purely commercial disputes with corporations has been made; nor has Smith pointed to any issue in this litigation to which a man might be insensitive. The relief sought, which seems premised on the belief that a female litigant is entitled to be judged by a panel that includes at least one woman, borders on the fantastic.

But we do not suppose that there is anything in the law that would forbid private parties to stipulate to a mode of private dispute resolution that specified a particular gender composition of the tribunal, assuming the arbitrators are not employees of the American Arbitration Association

or of some other dispute-resolution agency conducting the arbitration, which might bring Title VII into play. So if Smith has a contractual right to be judged by an arbitration panel that contains at least one woman, she can enforce it, though just how and when are questions, as we'll see; but let's start with the question whether there is a possible breach of contract.

Smith relies primarily on a "Guide to Mediation and Arbitration for Business People," published by the American Arbitration Association. The guide states that the Association "monitors the integrity of the process, the quality of roster composition and balance in terms of gender, racial and ethnic diversity," all aimed at a "bottom line" consisting of "a roster of neutrals crafted to meet the needs of the parties." Another publication of the Association, "A Brief Overview of the American Arbitration Association," states that the Association maintains "a national panel of experts, diverse in gender and ethnicity." These statements alone cannot support a breach of contract suit against either the Association or Argenbright. The fact that the contract provides for arbitration in accordance with the Association's rules and regulations no more made the Association a party to the contract than a building contract that specifies that the builder will install Kohler plumbing fixtures makes Kohler a party to the building contract. The Association did agree to administer the arbitration between Smith and Argenbright in exchange for a fee, and by doing so it undertook to administer the arbitration in accordance with the Association's rules. But the "Guide" and the "Brief Overview" are not a part of those rules, and the rules of the Association (which, remember, are incorporated in the stock purchase agreement) are explicit that the Association's "authority and duties . . . are prescribed in the agreement of the parties and in these rules."

We doubt, moreover, that a "promise," if that is how the statements we quoted should be read, to "monitor . . . balance in terms of gender, racial and ethnic diversity" or maintain "a national panel of experts, diverse in gender and ethnicity," is sufficiently definite to be enforceable in a suit for breach of contract. Shields v. Local 705, International Brotherhood of Teamsters Pension Plan, 188 F.3d 895, 900-01 (7th Cir. 1999); Beraha v. Baxter Health Care Corp., 956 F.2d 1436, 1441 (7th Cir. 1992). No guidance is found in the Association's rules, or statements, or any place else that we can find, on what these duties of monitoring and maintenance consist of and how compliance or

noncompliance with them is determined. The language is not promissory, and this distinguishes the employee-handbook cases on which Smith relies. See, e.g., Duldulao v. Saint Mary of Nazareth Hospital Center, 505 N.E.2d 314, 318 (Ill. 1987); Pine River State Bank v. Mettille, 333 N.W.2d 622, 627 (Minn. 1983); see 1 E. Allan Farnsworth, Farnsworth on Contracts sec. 2.9a, pp. 93-94 (1990). The closest analogy is to the federal statute that seeks to prevent discrimination in the creation of jury venires, 28 U.S.C. sec.sec. 1861-1867, but the analogy is weak because jurors are drafted and arbitrators are volunteers. A venire can be compared with the population from which it was drawn to see whether it is a representative sample of that population. But even if a list of lawyers could be compiled who would be capable of arbitrating large and complex commercial cases, it would be impossible to determine how many would be willing to serve on AAA panels. Either the "promise" on which Smith relies is too vague to be enforceable or the AAA never intended (and never manifested an intent) that the promise be legally enforceable, or, most likely, both. See, e.g., Architectural Metal Systems, Inc. v. Consolidated Systems, Inc., 58 F.3d 1227, 1229 (7th Cir. 1995).

The breach of contract claim against Argenbright is, if anything, weaker than the claim against the AAA. Argenbright never undertook to exercise its discretion over arbitrator selection in a particular way. We do not know why Argenbright objected to the one woman on the AAA's list; but even if it did so for precisely the reason that Smith suspects, this was not the breach of any express or implied contract between Smith and itself. We take it that Smith's real complaint about Argenbright is that Argenbright took advantage of the Association's having supplied a list that made it easy for a party to obtain an all-male panel. The argument in other words is that the panel composition was contaminated to Argenbright's advantage and that having thus been the beneficiary of the Association's breach Argenbright should, by principles of unjust enrichment, be forced to relinquish the unfair advantage that it obtained from that breach.

So viewed, however, Smith's claim against Argenbright is premature. The time to challenge an arbitration, on whatever grounds, including bias, is when the arbitration is completed and an award rendered. E.g., Dean v. Sullivan, 118 F.3d 1170 (7th Cir. 1997); Michaels v. Mariforum Shipping, S.A., 624 F.2d 411, 414 n.4 (2d Cir. 1980). To allow a party to bring an independent suit to enjoin the arbitration is inconsistent with fundamental procedural principles that apply with even greater force to arbitration than to

conventional litigation. If during jury voir dire a Batson objection to the exercise of a peremptory challenge is rejected by the trial judge, the disappointed litigant cannot bring a suit to enjoin the litigation. But that is what Smith tried to do here. It is true that in rare instances a litigant can interrupt the litigation by filing an interlocutory appeal or seeking mandamus. But a party who wants to have such an option should not (and of course need not) consent to arbitration, which generally and here does not have an appellate component. The choice of arbitration is a choice to trade off certain procedural safeguards, such as appellate review, against hoped-for savings in time and expense (other than the expense of the tribunal), a measure of procedural simplicity and informality, and a differently constituted tribunal. Harter v. Iowa Grain Co., 220 F.3d 544, 553 (7th Cir. 2000); see also Generica Ltd. v. Pharmaceutical Basics, Inc., 125 F.3d 1123, 1129-30 (7th Cir. 1997). That choice would be disrupted by allowing a party to arbitration to obtain an interlocutory appeal to a federal district court, as Smith has tried to do.

The parties are of diverse citizenship, so Argenbright if it obtains an award in the arbitration will be able to seek confirmation (that is, enforcement) of the award in federal district court under the Federal Arbitration Act. 9 U.S.C. sec. 9; International Union of Operating Engineers, Local No. 841 v. Murphy Co., 82 F.3d 185 (7th Cir. 1996); P & P Industries, Inc. v. Sutter Corp., 179 F.3d 861, 866 (10th Cir. 1999). Smith points out that while she will be able to object to confirmation, the grounds for objection permitted by the act (or by judicial extension of it, First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 942 (1995); Cole v. Burns International Security Services, 105 F.3d 1465, 1486 (DC Cir. 1997)) are extremely limited, and though one of them is "evident partiality" by the arbitrators, 9 U.S.C sec. 10(a)(2); Harter v. Iowa Grain Co., supra, 220 F.3d at 553; Dawahare v. Spencer, 210 F.3d 666, 669 (6th Cir. 2000), this will be impossible as a practical matter to prove; therefore she should be permitted to sue now. That's a non sequitur. The right to object to the composition of the tribunal on broader grounds than evident partiality was one of the procedural rights that Smith gave up when she agreed to the arbitration clause in the stock purchase agreement. By agreeing to arbitrate in a setting in which Argenbright if it prevailed could seek confirmation under the Federal Arbitration Act, Smith bound herself to accept the limited judicial review which that act allows. First Options of Chicago, Inc. v. Kaplan, supra, 514 U.S. at 942; Connecticut General Life Insurance

Co. v. Sun Life Assurance Co., 210 F.3d 771, 774 (7th Cir. 2000); UHC Management Co. v. Computer Sciences Corp., 148 F.3d 992, 997 (8th Cir. 1998).

We mentioned the principle of Batson v. Kentucky, 476 U.S. 79, (1986), that peremptory challenges cannot be based on racial or other invidious grounds, now including gender. J.E.B. v. Alabama, 511 U.S. 127 (1994); United States v. Brisk, 171 F.3d 514, 522-23 (7th Cir. 1999); United States v. Tipton, 90 F.3d 861, 881 (4th Cir. 1996). Smith argues that this principle, which is based on the equal protection clause (more precisely, where federal rather than state action is concerned, on the due process clause of the Fifth Amendment, interpreted as containing an equal-protection component), should be extended to arbitration, since the courts through the Federal Arbitration Act and cognate state statutes lend their assistance to arbitration. We disagree. Arbitration is a private self-help remedy. The American Arbitration Association is a private organization selling a private service to private parties who are under no legal obligation to agree to arbitrate their disputes or, if they decide to use arbitration to resolve disputes, to use the services of the Association, which is not the only provider of such services. Compare Dunham v. Frank's Nursery & Crafts, Inc., 919 F.2d 1281, 1286 (7th Cir. 1990). When arbitrators issue awards, they do so pursuant to the disputants' contract--in fact the award is a supplemental contract obligating the losing party to pay the winner. The fact that the courts enforce these contracts, just as they enforce other contracts, does not convert the contracts into state or federal action and so bring the equal protection clause into play. Parks v. "Mr. Ford", 556 F.2d 132, 156 (3d Cir. 1977) (concurring opinion). This is not Shelley v. Kraemer, 334 U.S. 1 (1948), or Marsh v. Alabama, 326 U.S. 501 (1946), cases in which the enforcement of private contracts had the effect of establishing private governments exercising governmental power under delegation from the state.

Smith also appeals to a provision of Minnesota's arbitration statute that if the method for appointing arbitrators agreed upon by the parties fails, the court shall appoint the arbitrators. Minn. Stat. sec. 572.10(1). Smith's invocation of the Minnesota statute is frivolous, first, because the invocation is premature; second, because the choice of law provision in the stock purchase agreement does not appear in the arbitration clause but is instead a direction to the arbitrators as to what law to apply (and the arbitrators, we are told, have so interpreted

it); and third because the agreed method of selection did not fail, since there was never an agreement that the list of possible arbitrators would contain a particular number or percentage of women.

Finally, Smith makes two statutory claims against the American Arbitration Association. The first is that the Association's representations about gender balance violate Illinois's Uniform Deceptive Trade Practices Act, 815 ILCS 510/2. The point we made earlier about the vagueness of the representations is equally applicable here. Laws forbidding deceptive advertising are inapplicable to "puffing," which is to say to general quality claims too vague to create warranted reliance. Totz v. Continental Du Page Acura, 602 N.E.2d 1374, 1383 (Ill App. 1992); see also Lionel Trains, Inc. v. Albano, 831 F.Supp. 647, 651 (N.D. Ill. 1993), aff'd without opinion, 35 F.3d 568 (7th Cir. 1994). That is the nature of the alleged "promise" of balance and diversity. Moreover, the statutory remedy is an injunction against the deceptive advertising, 815 ILCS 510/3; Smith v. Prime Cable of Chicago, 658 N.E.2d 1325, 1337 (Ill. App. 1995); Empire Home Services, Inc. v. Carpet America, Inc., 653 N.E.2d 852 (Ill. App. 1995), which is not the relief sought here. Stated otherwise, Smith being undeceived and the arbitration conducted, her claim for prospective relief against the allegedly deceptive advertising, the only relief sought, is moot.

The second statutory claim is of a violation of the prohibition against gender discrimination in Illinois' Human Rights Act, 775 ILCS 5/5-102. Smith argues that the AAA is a "place of public accommodation" within the meaning of the act because it is a business whose services are "offered, sold or otherwise made available to the public." But there is no allegation of discrimination by the AAA. Argenbright is accused of having taken advantage of the opportunity that the Association created for it to strike the woman from the list of possible arbitrators, and that action (depending on the company's motive) could conceivably be a form of gender discrimination (by analogy to Batson), though that we need not decide since there is no suggestion that Argenbright is a place of public accommodation. The charge against the AAA is that it failed to maintain gender diversity or balance, but such a failure, while it might conceivably violate an undertaking by the AAA, is not discrimination. Efforts to achieve gender diversity can constitute reverse discrimination; but failure to achieve diversity, failure in other words to engage in affirmative action, cannot. The law permits affirmative action in

some circumstances, but it does not require it except as a remedy for discrimination by the defendant. E.g., Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 259 (1981); Yatvin v. Madison Metropolitan School District, 840 F.2d 412, 415 (7th Cir. 1988).

Affirmed.

FOOTNOTE

/* The plaintiff filed a petition for rehearing within 14 days following the issuance of our decision, without waiting for us to issue the opinion explaining our decision. She cannot be faulted for doing this, since the period for filing a petition for rehearing runs from the date of the judgment rather than from the date of the opinion, Fed. R. App. P. 40(a)(1), but for future reference we note that the court's policy, in cases in which decision precedes opinion, is to allow the losing party a 14-day extension of time following the issuance of the opinion for seeking rehearing. We shall therefore give Smith 14 days to file a supplementary petition if she wishes.