Filed 10/23/13 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| MAVE ENTERPRISES, INC., | B241807 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. LC086852) |
| v. | |
| THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT, | ORDER MODIFYING OPINION [NO CHANGE IN JUDGMENT] |
| Defendant and Appellant. | |

THE COURT:

It is ordered that the majority opinion filed herein and certified for publication in the Official Reports on September 26, 2013, be modified as follows:

To the paragraph commencing at the bottom of page 31 with "*Shahinian* also noted that the Court of Appeal" and continuing on page 32, insert on page 32 the following quotation and citation between the citation to footnote 16 of *Shahinian* and the sentence that begins "Private arbitration . . . really is private":

> "If the limited state involvement of converting [an arbitration] award into a judgment were to engender the same due process incidents required with respect to [a judgment] originally assessed and imposed by a court, the contrasting simplicity, informality, and private nature of arbitration would be seriously undermined." (*Rifkind & Sterling, Inc. v. Rifkind*, *supra*, 28 Cal.App.4th at p. 1292.)

There is no change in the judgment.

MALLANO, P. J.          CHANEY, J.

1

Filed 9/26/13 (unmodified version)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| MAVE ENTERPRISES, INC., | B241807 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. LC086852) |
| v. | |
| THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT, | |
| Defendant and Appellant. | |

APPEAL from an order and a judgment of the Superior Court of Los Angeles County, William D. Stewart, Judge. Affirmed.

Horvitz & Levy, Jeremy B. Rosen, John F. Querio; Weston & McElvain, Richard C. Weston and Aaron C. Agness for Defendant and Appellant.

Shernoff Bidart Echeverria Bentley, William M. Shernoff, Travis M. Corby and Jill P. McDonell for Plaintiff and Respondent.

_____

In this case, an insured filed a bad faith action against its insurer in the Los Angeles Superior Court. After spending a substantial amount of time litigating the case in the superior court, the parties stipulated to have their disputes resolved through binding arbitration. The terms of the stipulation were placed on the record, and the superior court retained jurisdiction, requiring the parties to submit periodic status reports about the arbitration proceedings. The parties entered into a separate, written stipulation to arbitrate under the auspices of a sponsoring organization.

The arbitrator found in favor of the insured and awarded $3,696,414. The insurer filed a petition to vacate, modify, or correct the award in the United States District Court for the Central District of California based on diversity of citizenship. For its part, the insured filed a motion to confirm the award in the superior court. The insurer then filed a motion in the superior court, requesting that it stay its proceedings pending a decision by the federal district court. Oppositions were filed to each motion. Before the federal district court had issued a decision, the superior court denied the insurer's request for a stay, confirmed the arbitration award in its entirety, and entered judgment in favor of the insured. The insured then filed a motion in the federal district court, requesting that it abstain from hearing the matter. The federal district court agreed based on the doctrine of abstention; it denied the insurer's petition and closed the case.

On appeal, the insurer contends that the superior court abused its discretion by denying the motion to stay its proceedings pending a decision by the federal district court. The insurer also asserts that the arbitration award should be reviewed under the procedural provisions of the Federal Arbitration Act (FAA) (9 U.S.C. §§ 10, 11), and the award must be vacated, modified, or corrected because, in calculating damages, the arbitrator exhibited a manifest disregard of the law. In the alternative, the insurer argues that, under the California Arbitration Act (CAA) (Code Civ. Proc., §§ 1280–1294.2), the award should be vacated or corrected.

We conclude that the superior court did not abuse its discretion by denying the insurer's motion for a stay, primarily because the superior court acquired jurisdiction over the parties' disputes long before the insurer filed its petition in the federal district court;

2

the superior court retained jurisdiction over the case while it was being arbitrated and was kept informed of the arbitration proceedings; and the superior court was more knowledgeable about the litigation. We also conclude that, even assuming the parties' stipulations to arbitrate or the insurance policy involved interstate commerce, the procedural provisions of the CAA, not the FAA, govern judicial review of the award. Finally, under the CAA, we conclude that the superior court properly confirmed the arbitration award in its entirety.

# I

# BACKGROUND

The allegations and facts in this appeal are taken from the complaint and the papers submitted in connection with (1) the motions to confirm and vacate the arbitration award, and (2) the insurer's motion for a stay of the proceedings below.

## A. The Complaint

The complaint alleged as follows. Plaintiff Mave Enterprises, Inc. (Mave), makes high quality Kosher foods. It is a California corporation and has its manufacturing plant in North Hollywood.

On or about February 1, 2006, The Travelers Indemnity Company of Connecticut (Travelers) issued a property casualty insurance policy to Mave. The policy covered property damage to Mave's manufacturing equipment and its inventory, business interruption losses, property damage, and lost business income.

On September 25, 2006, a severe fire occurred at Mave's manufacturing facility, which was covered under the Travelers policy. Mave submitted claims to Travelers. Travelers did not make timely payments to cover the losses. Travelers would either deny the claim, delay payment by conducting unreasonable investigations, or take unreasonable positions such as requiring Mave to pay for its large losses and then seek reimbursement from Travelers. The reimbursement process required Mave to borrow money at high interest rates. The interest and finance charges were excessive because (1) Travelers was slow in reimbursing Mave, and (2) on some items, Travelers improperly refused to reimburse Mave altogether. At other times, Travelers would decide that Mave was

3

entitled to payment on a particular item but would not make a lump sum payment; instead, Travelers would make several smaller payments over time. Travelers contested the value of damaged goods, inventory, equipment, and food. Travelers also refused to pay for business interruption losses.

On January 30, 2008, Travelers wrote to Mave, indicating that its investigation into the fire damage was complete and that all issued checks were without prejudice to Mave's right to pursue additional benefits.

On September 9, 2009, Mave filed this action against Travelers in Los Angeles Superior Court, alleging two causes of action: (1) breach of contract based on Travelers's failure to investigate Mave's claims in a timely manner and its refusal and delay in paying various policy benefits; and (2) breach of the covenant of good faith and fair dealing.

The breach of covenant claim alleged that Travelers had acted in bad faith by denying to pay full benefits and by unreasonably delaying the payments it made. Travelers's bad faith conduct forced Mave to retain legal counsel, construction consultants, and other experts to obtain benefits under the policy. Travelers had engaged in acts or omissions that were malicious, oppressive, or fraudulent.

As relief, Mave sought consequential damages for breach of contract. On the breach of covenant claim, Mave sought damages for failure to pay the appropriate amount of benefits and an award of punitive damages.

Mave filed a first amended complaint on January 25, 2010, but did not add any causes of action against Travelers.

## B. Arbitration

The trial began in the superior court in August 2011. On August 11, 2011, during jury selection, Mave and Travelers (parties) agreed to arbitrate their disputes. The oral agreement was placed on the record and consisted of these terms: (1) arbitration would be "a resolution of the trial of this matter"; (2) the arbitration award would be limited to a low of $500,000 and a high of $7.5 million, but the arbitrator would not be told about the "high low" provision; (3) the arbitration award would be binding; (4) the superior court's order on in limine motions would apply in the arbitration; (5) retired California Supreme Court

4

Justice Edward Panelli had been selected as the arbitrator; and (6) the superior court retained jurisdiction to issue subpoenas. In addition, the superior court stated it would retain jurisdiction to "make sure you're under way" and would also schedule periodic status conferences. The superior court set the first status conference for November 17, 2011.

By minute order, also dated August 11, 2011, the superior court stated: "The Court is informed that parties have reached a settlement agreement regarding binding arbitration. Terms of the Settlement are recited in open court . . . . Stipulation of parties re motions in limine to stand. The Court retains jurisdictions to enforce subpoenas. [¶] A Status Conference re Status of Arbitration is set on November 17, 2011."

On August 25, 2011, the parties signed a "Stipulation for Arbitration and Selection of Arbitrator," which read: "It is stipulated and agreed by the Parties to submit all disputes, claims or controversies to neutral, binding arbitration at JAMS, pursuant to the JAMS Arbitration Administrative Policies and, unless otherwise agreed in writing by the parties, to the applicable JAMS Arbitration Rules and Procedures. . . ."

JAMS rule 25 states: "Proceedings to enforce, confirm, modify or vacate an Award will be controlled by and conducted in conformity with the *Federal Arbitration Act*, 9 U.S.C. Sec 1 et seq. ***or*** *applicable state law*. The Parties to an Arbitration under these Rules shall be deemed to have consented that judgment upon the Award may be entered in any court having jurisdiction thereof." (Italics & boldface added.)

Neither the stipulation to arbitrate reached in the superior court nor the August 25, 2011 JAMS stipulation designated the law of a particular jurisdiction to govern the arbitration proceedings. Both stipulations were silent on that issue. In that regard, JAMS rule 24(c) states: "In determining the merits of the dispute, the Arbitrator shall be guided by the rules of law agreed upon by the Parties. *In the absence of such agreement*, the Arbitrator shall be guided by *the rules of law and equity* that the *Arbitrator* deems to be *most appropriate*. The Arbitrator may grant any remedy or relief that is *just and equitable* and *within the scope of the Parties' agreement*, including, but not limited to, specific performance of a contract or any other equitable or legal remedy." (Italics added.)

5

On November 17, 2011, the parties filed a stipulation to continue the status conference in the superior court and to inform the court that Travelers had asked retired Justice Panelli to recuse himself as the arbitrator, which he did. The parties had agreed to arbitrate the case before Alexander Polsky of JAMS. The superior court continued the November 17, 2011 status conference to February 8, 2012. On January 9, 2012, the parties filed a request that the status conference be continued to a date after February 29, 2012, because the arbitration hearing was scheduled for February 27 through February 29, 2012. The superior court continued the status conference to March 21, 2012.

The arbitration hearing began on February 27, 2012, and lasted approximately three days. On March 21, 2012, the arbitrator provided the parties with his "Issue Findings of Arbitrator," which indicated how he had resolved the major factual and legal disputes on each of Mave's claims. The arbitrator also requested supplemental briefing on: (1) the amount of compensatory damages that should be awarded on each claim; (2) the amount, if any, of exemplary damages that should be awarded; and (3) the amount, if any, of "attorney fees" that Mave should recover.[1]

At the March 21, 2012 status conference, the parties informed the superior court that the arbitration hearing had been conducted, and they were awaiting the arbitration award. Mave's counsel stated, "I just want the ruling. Make sure they pay and at that point, we can dismiss obviously."

On March 29, 2012, the arbitrator issued "Factual Findings," consisting of 12 pages. The arbitrator found that although Travelers had paid a total of $3,437,631.08

---

[1] Technically, Mave did not seek an award of "attorney fees." "When an insurer's tortious conduct reasonably compels the insured to retain an attorney to obtain the benefits due under a policy, it follows that the insurer should be liable in a tort action for that expense. The attorney's fees are an economic loss—damages—proximately caused by the tort. . . . These fees must be distinguished from recovery of attorney's fees *qua* attorney's fees, such as those attributable to the bringing of the bad faith action itself. What we consider here is attorney's fees that are recoverable as damages resulting from a tort in the same way that medical fees would be part of the damages in a personal injury action." (*Brandt v. Superior Court* (1985) 37 Cal.3d 813, 817 (*Brandt*), citation omitted.)

in policy benefits, Travelers had acted in bad faith with respect to "equipment reimbursement" and the "inventory valuation process." He rejected Mave's claims that (1) another company retained by Travelers as an appraiser and a salvager (Stoner & Co.) had impermissibly salvaged products that had been damaged in the fire, and (2) Travelers should have paid for more than six months of lost business income. At the end of the Factual Findings, the arbitrator established a briefing schedule on the subject of whether Mave was entitled to attorney fees and, if so, in what amount.

On April 11, 2012, the arbitrator issued the award, which recited that Travelers was liable for: (1) $161,939 in compensatory damages on Mave's inventory claim ($106,939, plus interest of $55,000); (2) $2,429,085 in punitive damages (15 times the amount of compensatory damages); and (3) *Brandt* fees (see *Brandt*, *supra*, 37 Cal.3d at pp. 817–820), which the arbitrator calculated by multiplying the compensatory damages award *and* the punitive damages award—a total of $2,591,024—by the 40 percent contingency rate set forth in the retainer agreement between Mave and its counsel. The arbitrator awarded $1,036,450 in *Brandt* fees. Costs totaled $68,940. The arbitrator awarded a total of $3,696,414.[2]

On or about April 18, 2012, Travelers submitted a motion to the arbitrator, requesting that he "correct computational, typographical, and/or other similar errors in the award." With regard to *Brandt* fees, Travelers argued that Mave was entitled to only those attorney fees incurred in recovering the *policy benefits* (compensatory damages); the

---

[2] In calculating the total award, the arbitrator made a mathematical error that the parties have not mentioned. In determining the amount of *Brandt* fees, the arbitrator added the award of compensatory damages, $161,939, to the award of punitive damages, $2,429,085, and multiplied that sum by 40 percent. The sum of the compensatory and punitive damages is $2,591,024. The arbitrator, however, used the figure $2,591,124—a difference of $100. The correct amount of *Brandt* fees, using the arbitrator's formula, is $161,939 + $2,429,085 = $2,591,024, then $2,591,024 x .40 = $1,036,409.60, rounded up to $1,036,410. Thus, the total arbitration award should have been $3,696,374, including costs, not $3,696,414.

7

arbitrator should not have taken the award of *punitive damages* into account. According to Travelers, the arbitrator should have calculated *Brandt* fees in the same way Mave did in its arbitration brief—by multiplying $161,939—the compensatory damages award—by the 40 percent contingency rate in Mave's retainer agreement. The award of punitive damages should not have been considered. (See *Cassim v. Allstate Ins. Co*. (2004) 33 Cal.4th 780, 809–813.) Travelers also argued that the arbitrator had erred in determining the amount of punitive damages: The arbitrator had multiplied the *compensatory* damages award ($161,939) by 15. Instead, as Travelers explained, the arbitrator should have applied a multiplier to the *tort* recovery—the *Brandt* fees as properly calculated. Travelers also took issue with the arbitrator's use of a 15-to-1 ratio of punitive damages to compensatory damages, arguing it exceeded the constitutional maximum: Under the federal due process clause of the Fourteenth Amendment, the ratio of punitive damages to compensatory damages should not exceed a single-digit ratio, for example, four to one. Thus, the 15-to-1 ratio was unconstitutionally excessive. On April 19, 2012, the arbitrator denied Travelers's motion.

By letter dated April 23, 2012, the arbitrator thanked counsel for their "confidence" and "professionalism during this rather unusual arbitration." He also stated, "I cannot recall receipt of less developed testimony as to loss of revenues. Nor can I recall more aggravated conduct by a claim professional." The arbitrator commented that "[t]he result was apparent. A high multiplier which, due to the uniqueness of the conduct was considered in the fee claim; and a denial of what appeared to be a genuine loss of revenue, reputation and clients—but whose proofs fell below the required burden. [¶] I imagine both sides found themselves surprised, and have criticism for these two extremes. As an arbitrator, I can say that this ended up as one of the more extreme and unusual cases I have heard, and awards I have issued."

## C.    Challenges to the Award

At a status conference on April 25, 2012, Mave's counsel informed the superior court that she intended to file a motion to confirm the arbitration award. The superior court suggested that the parties reserve a date for the hearing. Before a date was chosen,

8

counsel for Travelers announced that "we are filing a petition to vacate or modify the award in federal court today," referring to the United States District Court for the Central District of California (*The Travelers Indemnity Company of Connecticut v. Mave Enterprises, Inc.* (C.D.Cal., 2012, No. CV 12-3574)).[3]

The next day, April 26, 2012, Mave filed a motion in the superior court to confirm the award. On May 3, 2012, Travelers filed two motions in the superior court: (1) a motion seeking a stay of the action pending a decision by the federal district court, and (2) a motion to vacate or correct the arbitration award. On May 14, 2012, Travelers filed in the superior court an opposition to Mave's motion to confirm the award. Also on May 14, 2012, Mave filed in the superior court an opposition to each of Travelers's motions. All three motions—Mave's motion to confirm the award, Travelers's motion to stay the action, and Travelers's motion to vacate or correct the award—were heard on May 25, 2012. At the beginning of the hearing, the superior court issued a tentative ruling, granting Mave's motion to confirm the award and denying both of Travelers's motions. At the conclusion of the hearing, the superior court adopted the tentative as its order. On June 6, 2012, the superior court confirmed the arbitration award and entered judgment in Mave's favor for $3,696,414.

While motions were being filed and decided in the superior court, proceedings commenced in the federal district court on April 25, 2012, with the filing of Travelers's petition to vacate, modify, or correct the arbitration award. Travelers asserted in its petition that the arbitration was governed by the FAA and that the arbitration award should

---

[3] "As for jurisdiction over controversies touching arbitration, the [FAA] does nothing, being 'something of an anomaly in the field of federal-court jurisdiction' in bestowing no federal jurisdiction but rather requiring an independent jurisdictional basis." (*Hall Street Associates, L.L.C. v. Mattel, Inc.* (2008) 552 U.S. 576, 581–582 [128 S.Ct. 1396].) In the present case, Travelers filed its petition in federal district court based on diversity jurisdiction (28 U.S.C. § 1332), taking the position that (1) Mave was a "citizen" of California and Delaware, (2) Travelers was a "citizen" of Connecticut, and (3) the amount in controversy exceeded $75,000.

be vacated, modified, or corrected based on the arbitrator's errors in calculating *Brandt* fees and the amount of punitive damages. Mave filed an opposition. On August 28, 2012, the federal district court issued a tentative order, denying Travelers's petition in part and granting it in part. In the tentative order, the district court rejected Travelers's attack on the punitive damages award but concluded the arbitrator had manifestly disregarded the law in determining the amount of *Brandt* fees by including the award of punitive damages in its calculations. Accordingly, the federal district court recalculated the *Brandt* fees, multiplying the amount of compensatory damages ($161,939) by the 40 percent contingency rate in Mave's retainer agreement, yielding $64,775.60. The federal district court left the awards of compensatory and punitive damages untouched, resulting in a total award of $2,655,799.60.

On September 10, 2012, Mave filed a motion for reconsideration in the federal district court, requesting that it decline to exercise jurisdiction over the validity of the arbitration award in light of the superior court's prior order and judgment. The federal district court granted Mave's motion based on the doctrine of abstention. The district court vacated its tentative order and denied Travelers's petition to vacate, modify, or correct the award. The district court's order concluded by stating: "This matter shall close." Travelers appealed to the Ninth Circuit Court of Appeals, and, as of the date of our opinion, the Ninth Circuit has not scheduled the appeal for oral argument (*Travelers Indemnity Company of Connecticut v. Mave Enterprises, Inc.* (9th Cir., No. 12-57030)).[4]

---

[4] Travelers requested that we take judicial notice of the documents filed in the federal district court. We initially granted the request as to only three documents: Travelers's petition, Mave's opposition to the petition, and the order granting Mave's motion for reconsideration. We now conclude that the request for judicial notice should be, and is, granted in its entirety to explain fully the proceedings in the federal district court. We have therefore considered the portions of Travelers's opening brief that discuss or mention federal court documents other than the three we judicially noticed at first.

## DISCUSSION

We review de novo the superior court's judgment confirming the arbitration award. (See *Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 376, fn. 9; *Greenspan v. LADT, LLC* (2010) 185 Cal.App.4th 1413, 1435.) We review the order denying a stay pending the federal district court's decision for an abuse of discretion. (See *Caiafa Prof. Law Corp. v. State Farm Fire & Cas. Co.* (1993) 15 Cal.App.4th 800, 804 (*Caiafa*).)

On appeal, Travelers contends the superior court erred in denying the motion to stay its proceedings pending the outcome in federal district court. Travelers also argues that the arbitration was governed by the FAA because (1) Mave's insurance policy and the parties' stipulations to arbitrate involved interstate commerce, and (2) JAMS rule 25 states that "[p]roceedings to enforce, confirm, modify or vacate an Award will be controlled by and conducted in conformity with the *Federal Arbitration Act*, 9 U.S.C. Sec 1 et seq. ***or applicable state law*.**" (Italics and boldface added.)

Travelers asserts that under the FAA, the arbitration award must be vacated, modified, or corrected with respect to the calculation of *Brandt* fees and the award of punitive damages because, in deciding those issues, the arbitrator exhibited a manifest disregard of the law—a basis for challenging an arbitration award available under the FAA but not the CAA. According to Travelers: "Under the FAA, an arbitration award must be vacated 'where the arbitrator[] exceeded [his] powers.' . . . An arbitrator '"exceed[s] [his] powers"' under the FAA where the award he issues . . . exhibits a manifest disregard of the law. . . . An arbitrator manifestly disregards the law where it is '"clear from the record that the arbitrator[] recognized the applicable law and then ignored it."' . . . Additionally, in order for manifest disregard of the law to be shown, the law the arbitrator disregarded must be well-defined, explicit, and clearly applicable." (See generally *LaPrade v. Kidder, Peabody & Co., Inc*. (D.C.Cir. 2001) 246 F.3d 702, 706; Schwarzer et al., Cal. Practice Guide: Federal Civil Procedure Before Trial (The Rutter Group 2013) ¶¶ 16:121.2 to 16:121.3, pp. 16-67 to 16-69 (rev. # 1, 2011).) A federal

district court would be more likely to vacate or correct an arbitration award under the manifest disregard standard (see *LaPrade*, at p. 706) than a California superior court applying the standard of review under the CAA (see *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 10–11, 13, 26–27). This explains why Travelers wanted the federal district court to review the arbitration award and why Mave wanted the superior court to determine the validity of the award.

In the alternative, Travelers argues that even under the CAA, the arbitration award should be vacated or corrected as to the calculation of *Brandt* fees and the amount of punitive damages awarded.[5]

We conclude that the superior court did not abuse its discretion by denying the insurer's motion for a stay, primarily because the superior court acquired jurisdiction over the parties' disputes long before the insurer filed its petition in the federal district court; the superior court retained jurisdiction over the case while it was being arbitrated and was kept informed of the arbitration proceedings; and the superior court was more knowledgeable about the litigation. We also conclude that, even assuming the insurance policy or the parties' stipulations to arbitrate involved interstate commerce, the procedural provisions of the CAA, not the FAA, govern judicial review of the award because neither the insurance policy nor the stipulations included a choice-of-law clause *designating the FAA as the controlling law*. Finally, under the CAA, we conclude that the superior court properly confirmed the arbitration award in its entirety.

---

[5] The *statutory* grounds for vacating and correcting an arbitration award are virtually identical under the FAA and the CAA. (Compare 9 U.S.C. §§ 10, 11, with Code Civ. Proc., §§ 1286.2, 1286.6). The manifest disregard standard is a judicially created basis for reviewing an award under the FAA (*Carte Blanche (Singapore) Pte., Ltd. v. Carte Blanche Intern., Ltd.* (2d Cir. 1989) 888 F.2d 260, 265) and is sometimes described as a judicial "gloss" on the statutory grounds, specifically section 10(a) of the FAA (see *Wachovia Securities, LLC v. Brand* (4th Cir. 2012) 671 F.3d 472, 480–481 & fn. 7). Regardless, the manifest disregard standard, like the statutes on which it is based, constitutes procedural law under the FAA.

12

## A.     Stay of Superior Court Proceedings

In general, "the pendency of a *prior* action in a court of competent jurisdiction, predicated on the same cause of action and between the same parties, constitutes good ground for abatement of a *later* action within the same jurisdiction either in the same court or in another court having . . . jurisdiction . . . ; and it is held that the first court to assume and exercise jurisdiction in a particular case acquires exclusive jurisdiction and prohibition lies to restrain another court from proceeding if it is threatening to do so." (*Simmons v. Superior Court* (1950) 96 Cal.App.2d 119, 122–123, citation omitted, italics added.) "In conformity with the rule of comity a . . . court 'which first takes the *subject matter* of a litigation into its control for the purpose of administering the rights and remedies with relation to specific [disputes] obtains thereby jurisdiction so to do, to the exclusion of the exercise of a like jurisdiction by other tribunals . . . , the powers of which are sought to be invoked by parties or their privies to the original action.'" (*Id*. at p. 124, italics added.)

Under the *Simmons* standard, the superior court in this case properly denied Travelers's motion for a stay. The superior court acquired *subject matter* when the civil action was filed on September 9, 2009. Travelers did not invoke federal jurisdiction—by filing its petition challenging the arbitration award—until April 25, 2012. Thus, the superior court acquired jurisdiction of the subject matter approximately two years and seven months before the federal district court.

We decline Travelers's invitation to segregate the parties' litigation into discrete procedural stages, namely: the filing of the civil action, the arbitration hearing, the issuance of the arbitration award, and the determination of the award's validity. In Travelers's view, the federal district court obtained jurisdiction over the validity of the arbitration award before the superior court—by one day. Travelers filed its petition in federal district court on April 25, 2012; Mave filed its motion in the superior court on April 26, 2012. As Travelers asserts in its opening brief: "[T]he federal court here was the first court to take jurisdiction over the *controlling issue* presented in this case— whether the arbitration award should be vacated. That issue had nothing to do with the prior proceedings in the state trial court before the arbitration began." (Italics added.) But

13

the pertinent question before us is which court first obtained jurisdiction over the subject matter—the parties' disputes. And the answer to that question is the superior court. Although the parties stipulated to arbitrate their disputes after the civil action was filed, the stipulation was reached around 11 months after litigating the case in the superior court and during jury selection. The parties' stipulation to arbitrate was placed on the record in the superior court; the superior court retained jurisdiction of the case during arbitration; and the parties submitted periodic status reports about the arbitration proceedings. Travelers's argument exalts form over substance, which is disfavored. (See Civ. Code, § 3528.)

As stated in *Caiafa*, *supra*, 15 Cal.App.4th 800: "It is black letter law that, when a federal action has been filed covering the same subject matter as is involved in a California action, the California court has the discretion but not the obligation to stay the state court action. . . .

"'In exercising its discretion the court should consider the importance of discouraging multiple litigation designed solely to harass an adverse party, and of avoiding unseemly conflicts with the courts of other jurisdictions. It should also consider whether the rights of the parties can best be determined by the court of the other jurisdiction because of the nature of the subject matter . . . .' . . . The California Supreme Court also has isolated another critical factor favoring a stay of the state court action in favor of the federal action . . . —the federal action is pending in California not some other state." (*Caiafa*, *supra*, 15 Cal.App.4th at p. 804, citations omitted.; accord, *Simmons v. Superior Court*, *supra*, 96 Cal.App.2d at pp. 124–125.) In *Caiafa*, the superior court stayed its own proceedings, allowing the federal district court to resolve the parties' dispute.

As an initial matter, we note that in *Caiafa*, the plaintiff insurer filed an action against the defendant attorney in the United Stated District Court for the Southern District of California nine months *before* the defendant attorney filed an action against the plaintiff insurer in Los Angeles Superior Court. (See *Caiafa*, *supra*, 15 Cal.App.4th at pp. 802–803, 805, italics added.) Both lawsuits involved the same subject matter: The insurer had

14

retained the attorney as *Cumis* counsel (*San Diego Navy Federal Credit Union v. Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358) to represent a third party who had been sued in several civil actions. The Court of Appeal held that the superior court did not abuse its discretion in staying its proceedings given that the federal action was filed first and involved substantially identical parties and the same subject matter.

Here, we have just the opposite situation: The state court action was filed years before the federal district court action. Based on the facts and result in *Caiafa*, the superior court in the present case did not abuse its discretion in denying Travelers's motion for a stay; it properly heard the parties' cross-motions to confirm and vacate the arbitration award and entered judgment accordingly.

Turning to the factors considered in *Caiafa*, the superior court here, by denying Travelers's motion for a stay, did not encourage multiple litigation designed solely to harass an adverse party. If anything, *Travelers* created "multiple litigation" by filing a second lawsuit (in federal district court) even though the superior court already had jurisdiction over the subject matter.

Nor did the denial of Travelers's motion for a stay cause "'unseemly conflicts with the courts of other jurisdictions.'" (*Caiafa*, *supra*, 15 Cal.App.4th at p. 804.) As the superior court stated in denying Travelers's motion: "Since this Court first took subject matter jurisdiction over this case, it is expected that the federal court will decline to entertain jurisdiction over this matter in light of the rule of comity. Further, there is no evidence of a hearing date or date on which the federal court will issue a ruling. This Court should decline to issue a stay that has an indefinite period of time." As it turned out, the federal district court ultimately declined to entertain jurisdiction of the parties' disputes based on the doctrine of abstention.

We cannot say that "'the rights of the parties [could have been] best . . . determined by the court of the other jurisdiction because of the nature of the subject matter.'" (*Caiafa*, *supra*, 15 Cal.App.4th at p. 804.) The superior court was just as capable as the federal district court in determining whether the procedural provisions of the FAA or the CAA applied and, if the FAA applied, of reviewing the arbitration award under the

15

manifest disregard standard. (See, e.g., *Countrywide Financial Corp. v. Bundy* (2010) 187 Cal.App.4th 234, 238, 250–254, 255–256, 260; *Rodriguez v. American Technologies, Inc.* (2006) 136 Cal.App.4th 1110, 1121–1122.) The superior court also had greater knowledge of the parties' disputes because it had presided over preliminary trial proceedings, ruled on in limine motions, enforced the parties' stipulation to arbitrate their disputes, and supervised the arbitration proceedings by requiring periodic status reports. In addition, because Travelers filed its petition in the United States District Court for the Central District of California, the two cases were in the same city—Los Angeles—making both tribunals equally convenient for the parties. (See *Caiafa*, *supra*, 15 Cal.App.4th at p. 804, citing *Thomson v. Continental Ins. Co.* (1967) 66 Cal.2d 738, 747–748.) As provided by JAMS rule 25: "The Parties to an Arbitration . . . shall be deemed to have consented that judgment upon the Award may be entered in any court having jurisdiction thereof." This rule permitted (1) Mave to file its motion to confirm the award in superior court, and (2) Travelers to file its petition to vacate, modify, or correct the award in federal district court. But the rule does not address which court shall have priority or exclusive jurisdiction to review the award.

Travelers contends it was prejudiced by the *superior court's* denial of its motion for a stay given that the *federal district court* subsequently granted its petition in part. Because the superior court denied Travelers's motion for a stay, confirmed the arbitration award in its entirety, and entered judgment in favor of Mave, the federal district court deferred to the superior court proceedings under the doctrine of abstention. If the superior court had stayed its proceedings, Travelers's partial victory in the federal district court— the tentative order—would have become final, and the federal court would have had exclusive jurisdiction over the matter.

As we see it, Travelers's prejudice argument suffers from two flaws. First, in ruling on a motion for a stay, the superior court does not, and did not, determine how a stay might affect the validity of the arbitration award. In other words, "prejudice," as defined by Travelers—whether the award should be confirmed, vacated, or corrected—is not a relevant factor in ruling on a motion to stay. Second, Travelers's prejudice argument

16

is nothing more than a complaint that, after the federal district court had partially granted Travelers's petition in the tentative order, the district court granted Mave's motion for reconsideration, decided to abstain from reviewing the arbitration award, denied Travelers's petition, and deferred to the superior court's decision. To the extent Travelers suffered any prejudice from the federal district court's abstention, it was self-inflicted. The superior court was the proper tribunal to review the arbitration award. Both the superior court and the federal district court came to that conclusion. Travelers's failed attempt to obtain relief in federal district court is not a ground for reversing the superior court's denial of the motion for a stay.

As the federal district court stated in granting Mave's motion for reconsideration: "[T]he principles of federalism, equity, and comity outweigh the Court's obligation to exercise jurisdiction over the matters before it. Importantly, the state court here has exercised jurisdiction over the underlying dispute for several years before Travelers' Petition, and the state court entered a judgment confirming the arbitration award prior to this Court's Tentative Order. These state court proceedings were entirely adequate. Finally, there was no clear choice of law clause in the arbitration agreement indicating that the FAA was to be used in the event of arbitration. Accordingly, the Court finds that abstention is proper."

Travelers fails to understand that, although the superior court enforced the parties' stipulation to arbitrate their disputes, it did not lose jurisdiction of the matter. "The statutory scheme outlined in [the CAA] contemplates the court's continuing involvement in the arbitration process. '"The proceeding to compel arbitration . . . is in essence a suit in equity to compel specific performance of the contract."' . . . If the parties fail to agree upon an arbitrator the court 'shall,' upon petition, appoint one. . . .

"The underlying [civil] action is stayed once arbitration begins . . . . However, the court retains jurisdiction over the matter . . . and there are several specific instances in which that jurisdiction might be exercised. In contract actions, for example, if the parties' agreement does not grant the arbitrator general law discovery powers, the court must intervene. . . . [A] court which has ordered arbitration retains 'the power . . . to entertain a

17

petition by the plaintiff for judicial assistance in moving the arbitration forward where the matter is foundering for reasons beyond plaintiffs' control . . . .' . . . [And] if a party is dissatisfied with the award of the arbitrator, the court may correct or vacate it." (*California Teachers Assn. v. Governing Board* (1984) 161 Cal.App.3d 393, 399, citations omitted, quoted with approval in *Roberts v. Packard, Packard & Johnson* (2013) 217 Cal.App.4th 822, 841–842.)  In California, "[t]he making of an agreement in this State providing for arbitration to be had within this State shall be deemed a consent of the parties thereto to the jurisdiction of the *courts of this State* to enforce such agreement by the making of *any orders provided for in* [*the CAA*] and by *entering of judgment on an award* under the agreement."  (Code Civ. Proc., § 1293, italics added.)

## B.    Application of the FAA or the CAA

Travelers contends that the arbitration award is subject to the procedural provisions of the FAA, thereby subjecting the award to review under the manifest disregard standard. (See 9 U.S.C. §§ 10, 11 [stating grounds for vacating and correcting award].)  As noted, neither the stipulation to arbitrate reached in the superior court nor the August 25, 2011 JAMS stipulation designated the law of a particular jurisdiction to govern the arbitration. According to Travelers, the FAA is made applicable by JAMS rule 25, which is a choice-of-law provision stating:  "Proceedings to enforce, confirm, modify or vacate an Award will be controlled by and conducted in conformity with the *Federal Arbitration Act*, 9 U.S.C. Sec 1 et seq. *or applicable state law*."  (Italics & boldface added.)  But this rule is worded in the disjunctive and does not indicate when the FAA, as opposed to state law, is applicable.  Travelers takes the position that the FAA applies under JAMS rule 25 because the choice-of-law provision is ambiguous, and the insurance policy and the parties' stipulations to arbitrate involved interstate commerce.  That assertion, in turn, is based on Travelers's contention that, because Mave and Travelers are incorporated in different states, any agreement between them involved interstate commerce.  Nevertheless, even assuming for the sake of argument that the insurance policy or the stipulations to arbitrate involved interstate commerce, the procedural provisions of the FAA did not necessarily apply in determining the validity of the arbitration award.

18

We examined this issue at length in *Valencia v. Smyth* (2010) 185 Cal.App.4th 153. There, we reviewed several California decisions addressing when the FAA's substantive and procedural provisions apply to an arbitration proceeding and award. We concluded that if an arbitration agreement or other pertinent transaction involves interstate commerce, the FAA's *substantive* provision (9 U.S.C. § 2) applies. That provision— section 2 of the FAA—states: "A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Section 2 "'"is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the [FAA]." . . . The rule of enforceability established by section 2 of the [FAA] preempts any contrary state law and is binding on state courts as well as federal. . . .'" (*Valencia v. Smyth*, *supra*, 185 Cal.App.4th at p. 165.)[6]

---

[6] See, e.g., *Southland Corp. v. Keating* (1984) 465 U.S. 1, 10–11, 13 [104 S.Ct. 852] [FAA preempts California law exempting claims from arbitration that arise under Franchise Investment Law (Corp. Code, §§ 31000–31516)]; *Perry v. Thomas* (1987) 482 U.S. 483, 490–492 [107 S.Ct. 2520] [FAA preempts California Labor Code section 229, which exempts wage claims from arbitration]; *Doctor's Associates, Inc. v. Casarotto* (1996) 517 U.S. 681, 686, [116 S.Ct. 1652] [FAA preempts Montana law requiring that contract containing arbitration provision bear notice of provision on first page of contract]; *Preston v. Ferrer* (2008) 552 U.S. 346, 349–350 [128 S.Ct. 978] [FAA preempts state law vesting initial adjudicatory authority in administrative agency]; *Marmet Health Care Center, Inc. v. Brown* (2012) 565 U.S. __ [132 S.Ct. 1201, 1202–1204 [FAA preempts West Virginia public policy exempting claims from arbitration brought against nursing homes for personal injury or wrongful death].)

But we also held that the presence of interstate commerce was not sufficient, by itself, to make the FAA's procedural provisions, including its provisions regarding judicial review (9 U.S.C. §§ 10, 11), applicable in California state courts.  This is so because a state court applies its own procedural law—here, the procedural provisions of the CAA—absent a choice-of-law provision expressly mandating the application of the procedural law of another jurisdiction.  As we stated:  "[I]f a contract involves interstate commerce, the FAA's *substantive* provision (9 U.S.C. § 2) applies to the arbitration.  But the FAA's *procedural* provisions (9 U.S.C. §§ 3, 4, 10, 11) do not apply unless the contract contains a choice-of-law clause expressly incorporating them."  (*Valencia v. Smyth*, *supra*, 185 Cal.App.4th at pp. 173–174; see *id.* at pp. 173–175 [discussing cases]; *Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1350–1352, 1354; *id.* at p. 1351 [FAA provisions governing judicial review do not apply in state court, in part because "the provisions for judicial review of arbitration awards in sections 10 and 11 of the FAA are directed to 'the United States court in and for the district where the award was made'"]; *Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 384, 388–389, 391, 394; *id.* at p. 389 ["the United States Supreme Court does not read the FAA's procedural provisions to apply to state court proceedings"]; *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 405–410; *id.* at pp. 402, 407–409 [FAA provision requiring jury trial to determine question regarding existence of arbitration agreement (9 U.S.C. § 4) does not apply in California state courts; instead, CAA provision governs, which requires that determination be made in manner provided for hearing and deciding motions (Code Civ. Proc., §1290.2)]; *Mount Diablo Medical Center v. Health Net of California, Inc.* (2002) 101 Cal.App.4th 711, 716, 722 [generic choice-of-law-clause stating that parties' agreement shall be governed by California law required application of procedural provisions of CAA, not FAA]; *Rodriguez v. American Technologies, Inc.* (2006) 136 Cal.App.4th 1110, 1122 [language in parties' agreement stating that any controversy or claim shall be arbitrated "pursuant to the FAA" meant parties "adopted the FAA—all of it—to govern their arbitration"].)

Thus, in this case, assuming the insurance policy or the parties' stipulations to arbitrate involved interstate commerce, the procedural provisions of the FAA, including its provisions regarding judicial review of arbitration awards (9 U.S.C. §§ 10, 11), were not applicable because the parties' stipulations did not expressly adopt the FAA as the controlling law. JAMS rule 25—to which both parties agreed—did not dictate the applicable procedural law because it refers to the FAA *or* "applicable state law," and the parties' stipulations did not "expressly" incorporate the procedural provisions of the FAA. As a consequence, the procedural provisions of the CAA, including its provisions governing judicial review (Code Civ. Proc., §§ 1286.2, 1286.6), determine the validity of the award. (See *Valencia v. Smyth*, *supra*, 185 Cal.App.4th at pp. 172–175.)

By the same token, a federal district court will apply the procedural provisions of the FAA unless the parties expressly adopt the provisions of the CAA. (See *Sovak v. Chugai Pharmaceutical Co*. (9th Cir. 2002) 280 F.3d 1266, 1269.) And, as noted, under the FAA's manifest disregard standard, a federal district court would be more likely to vacate or correct an award than a California superior court applying the CAA. Indeed, that is what almost happened here: The superior court confirmed the award in its entirety, and the federal district court tentatively concluded that the arbitrator had manifestly disregarded the law in calculating *Brandt* fees.

**C.      Judicial Review of the Award**

We first discuss the standard of review applied to arbitration awards under the CAA and then apply that standard to the award of *Brandt* fees and the award of punitive damages.

**1.  California Arbitration Act**

Under the CAA, "[t]he merits of a controversy that has been submitted to arbitration are not subject to judicial review. This means that we may not review the validity of the arbitrator's reasoning, the sufficiency of the evidence supporting the award, or any errors of fact or law that may be included in the award. . . . Judicial review is severely limited because that result 'vindicates the intentions of the parties that the award

21

be final, and because an arbitrator is not ordinarily constrained to decide according to the rule of law. . . .' . . .

"Code of Civil Procedure section 1286.2 sets forth a list of circumstances under which we may vacate an arbitrator's award, including where '[t]he rights of the parties were substantially prejudiced by misconduct of a neutral arbitrator,' (Code Civ. Proc., § 1286.2, subd. (a)(3)) and where, '[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted.' (Code Civ. Proc., § 1286.2, subd. (a)(4).) 'Unless one of the enumerated grounds exists, a court may not vacate an award even if it contains a legal or factual error on its face which results in substantial injustice.' . . . An arbitrator does not exceed his or her powers by making a legal or factual error or by giving erroneous reasons for an award." (*Harris v. Sandro* (2002) 96 Cal.App.4th 1310, 1313, some citations omitted; accord, *Hoso Foods, Inc. v. Columbus Club, Inc.* (2010) 190 Cal.App.4th 881, 887–888.)

With regard to Travelers's challenge of the *Brandt* fees and other damages—which the arbitrator awarded for bad faith breach of the insurance contract—we look for guidance to the principles set forth in *Greenspan v. LADT, LLC*, *supra*, 185 Cal.App.4th 1413: "'Judicial review of [arbitral] remedies . . . looks not to whether the arbitrator correctly *interpreted* the agreement, but to whether the award is drawn from the agreement *as the arbitrator interpreted it* or derives from some extrinsic source. . . . [W]here an arbitrator is authorized to determine remedies for contract violations, "courts have no authority to disagree with his honest judgment in that respect. . . . [A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision."' (*Id.* at p. 1447, quoting *Advanced Micro Devices, Inc. v. Intel Corp.*, *supra*, 9 Cal.4th at p. 378.)

"'[A]rbitrators, unless expressly restricted by the agreement of the parties, enjoy the authority to fashion relief they consider just and fair under the circumstances existing at the time of arbitration, so long as the remedy may be rationally derived from the contract and the breach.'" (*Greenspan v. LADT, LLC*, *supra*, 185 Cal.App.4th at p. 1448,

22

quoting *Advanced Micro Devices, Inc. v. Intel Corp.*, *supra*, 9 Cal.4th at p. 383.) "As pertinent here, JAMS Rule 24(c) provides: '[T]he Arbitrator shall be guided by the rules of law and equity that the Arbitrator deems to be most appropriate. The Arbitrator may grant any remedy or relief that is just and equitable and within the scope of the Parties' agreement. . . .' This type of rule 'has been described as "a broad grant of authority to fashion remedies" . . . and as giving the arbitrator "broad scope" in choice of relief.'" (*Greenspan*, at p. 1448, quoting *Advanced Micro Devices, Inc. v. Intel Corp.*, *supra*, 9 Cal.4th at pp. 383–384.)

In the present case, Travelers does not dispute that Mave was entitled to *Brandt* fees or punitive damages. It merely disagrees with the amount of *Brandt* fees and punitive damages and the manner in which the arbitrator calculated them. But the parties' stipulations did not specify that the substantive law of a particular jurisdiction should govern the resolution of Mave's claims or the available remedies. Thus, under JAMS rule 24(c), the arbitrator was "'guided by the rules of law and equity'" and had a broad grant of authority to impose "'any remedy or relief that is just and equitable.'" (*Greenspan v. LADT, LLC*, *supra*, 185 Cal.App.4th at p. 1448.) If Travelers had wanted a court to judicially review the arbitration award for errors of law, it should have included the appropriate language in the parties' stipulations. (See *Cable Connection, Inc. v. DIRECTV, Inc.*, *supra*, 44 Cal.4th at pp. 1355, 1361.) It failed to do so. As a result, the arbitrator's award was "'within the scope of the Parties' [stipulations]'" because the parties agreed that JAMS rule 24(c) would govern any relief the arbitrator awarded, and the stipulations did not "expressly restrict[] . . . the [arbitrator's] authority to fashion relief." (*Advanced Micro Devices, Inc. v. Intel Corp.*, *supra*, 9 Cal.4th at p. 383; see *Greenspan v. LADT, LLC*, *supra*, 185 Cal.App.4th at p. 1448.) Absent an express restriction, "arbitrators . . . may act *contrary to substantive law* and base their decisions upon broad principles of justice and equity." (*Hoso Foods, Inc. v. Columbus Club, Inc.*, *supra*, 190 Cal.App.4th at p. 887, italics added.)

## 2. Award of *Brandt* Fees

The arbitrator stated he was awarding *Brandt* fees based on Travelers's reprehensible conduct and the language in Mave's retainer agreement, which authorized Mave's counsel to recover "forty percent (40%) of the *total gross recovery*" (italics added), that is, 40 percent of compensatory damages *and* punitive damages. In calculating *Brandt* fees, the arbitrator reasoned: "The efforts undertaken to address and obtain redress for [Travelers's] conduct justify strict application of the retainer. Specifically, an award of the 40% contingency fee on *both the compensatory and exemplary damages* is justified herein." (Italics added.)

Travelers emphasizes that, because *both* parties calculated *Brandt* fees in their arbitration briefs based solely on compensatory damages, and the arbitrator awarded *Brandt* fees based on compensatory *and* punitive damages, the arbitrator exceeded his powers by providing a remedy "expressly forbidden by the arbitration agreement or submission," citing *Advanced Micro Devices, Inc. v. Intel Corp.*, *supra*, 9 Cal.4th at pages 381–382. But the arbitrator did no such thing: The parties submitted the issue of *Brandt* fees to the arbitrator for determination, and nothing in the parties' stipulations to arbitrate or their arbitration briefs constituted an *express agreement* to limit the manner in which he could calculate *Brandt* fees. Under basic contract law, it is difficult to understand how the arbitration briefs of *opposing* parties could create an *express agreement* limiting the arbitrator's authority. Although the parties calculated *Brandt* fees using one formula and the arbitrator calculated them using another, it does not follow that the arbitrator exceeded his authority. If Travelers had wanted to restrict the *manner* in which the arbitrator calculated *Brandt* fees or damages, it should have "set out such limitations *explicitly and unambiguously* in the [stipulations to arbitrate]." (*Advanced Micro Devices, Inc. v. Intel Corp.*, *supra*, 9 Cal.4th at p. 383, italics added.)

As our Supreme Court held in an analogous case involving attorney fees, not *Brandt* fees: "[T]he arbitrator had the power to decide the entire matter of recovery of attorney fees. The recovery or nonrecovery of [attorney] fees being one of the 'contested issues of law and fact submitted to the arbitrator for decision' . . . , the arbitrator's decision

24

was final and could not be judicially reviewed for error." (*Moshonov v. Walsh* (2000) 22 Cal.4th 771, 776, citation omitted.) "Although the parties, by agreement, can certainly exclude specific questions from arbitration, in the absence of such restriction an arbitrator has the power to decide the submitted matter on *any* legal or factual basis, *whether or not any party has relied upon that particular basis*." (*Id*. at p. 777, italics added.) Here, the arbitrator could calculate *Brandt* fees regardless of the particular method used by the parties.

Travelers argues that the award of *Brandt* fees violated its rights under section 1021 of the Code of Civil Procedure, which provides: "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties . . . ." But Travelers concedes that under *Brandt v. Superior Court*, *supra*, 37 Cal.3d 813, an insured that prevails on a bad faith claim against its insurer is entitled to recover *Brandt* fees as a *form of damages* (see *id.* at pp. 817–819); *Brandt* fees "must be distinguished from the recovery of attorney's fees *qua* attorney's fees . . . . What we consider here is attorney's fees that are recoverable as *damages* resulting from a tort . . . ." (*Id.* at p. 817, some italics added.) As noted, Travelers does not dispute that the arbitrator was authorized to award *Brandt* fees. It objects only to the amount and the manner of their calculation. Those are errors of law we cannot review. And Travelers's rights under section 1021, if any, do not trump Mave's right to *Brandt* fees, even if the arbitrator miscalculated them.

Travelers's reliance on *Totem Marine Tug & Barge v. North Am. Towing* (5th Cir. 1979) 607 F.2d 649 (*Totem Marine*), is misplaced. There, two companies, Totem and North American entered into a six month time charter agreement on June 19, 1975. Under the charter, Totem would use a vessel owned by North American to tow a barge through the Panama Canal. On October 19, 1975, Totem terminated the charter allegedly because of excessive repairs and delays caused by the vessel. The parties submitted their dispute to arbitration. Although North American did not request damages for "charter hire"—the contract amount for use of the vessel between October 19 (the date of Totem's alleged breach) and December 19 (the end of the charter term)—the arbitration panel awarded

them nonetheless. (*Id.* at p. 650.) The arbitrators issued an award in favor of North American, and the federal district court confirmed the award.

The Fifth Circuit Court of Appeals reversed, stating: "The arbitration panel exceeded its powers by awarding damages for charter hire to North American. Not only did North American fail to list charter hire in its itemized statement of damages submitted to Totem, but in its brief submitted to the arbitration panel, North American conceded that charter hire was not an issue in the arbitration. Totem prepared and argued a case in which return expenses, and not charter hire, was the main issue. . . . In place of the $45,000 North American requested for return of the vessel, the arbitrators awarded charter hire totaling $117,440.00 . . . . [¶] . . . Although return expenses were specifically listed, damages for charter hire were not. By awarding charter hire, the arbitrators ignored the arbitral dispute submitted by the parties and dispensed their 'own brand of industrial justice.'" (*Totem Marine*, *supra*, 607 F.2d at pp. 651–652, italics added.)

Unlike *Totem Marine*, in the present case, Travelers knew that Mave was seeking *Brandt* fees, and they both submitted arbitration briefs addressing that issue. Here, the arbitrator did not award "an unrequested item of damages" or a type of relief that Mave had "conceded . . . was not at issue in the arbitration." (*Totem Marine*, *supra*, 607 F.2d at p. 651.)

In sum, "'"arbitrators are not bound to award on principles of dry law, but may decide on principles of equity and good conscience, and make their award . . . [according to what is just and good]."'" (*Advanced Micro Devices, Inc. v. Intel Corp.*, *supra*, 9 Cal.4th 362, 375.) We may not review the validity of the arbitrator's reasoning, the sufficiency of the evidence supporting the award, or any errors of fact or law that may be included in the award. (See *Moncharsh v. Heily & Blase*, *supra*, 3 Cal.4th at pp. 10–11; accord, *Pour Le Bebe, Inc. v. Guess? Inc*. (2003) 112 Cal.App.4th 810, 825.)

### 3. Award of Punitive Damages

Travelers contends that the arbitrator erred in awarding punitive damages based on the compensatory damages award ($161,939) and, instead, should have based punitive

damages on the award of tort damages, namely, the *Brandt* fees as properly calculated. Travelers also takes issue with the ratio of punitive damages to compensatory damages.

We conclude the award of punitive damages cannot be reviewed for legal error for the same reasons as the award of *Brandt* fees. (See pts. II.C.1., II.C.2., *ante*.) In short, "An arbitrator does not exceed his or her powers by making a legal or factual error or by giving erroneous reasons for an award." (*Harris v. Sandro*, *supra*, 96 Cal.App.4th at p. 1313.) The arbitrator used a 15-to-1 ratio of punitive damages to compensatory damages because he found that Travelers had engaged in "aggravated," "malicious," and "reprehensible" conduct.

In confirming the arbitration award, the superior court addressed the arbitrator's use of a 15-to-1 ratio, explaining: "[Travelers] argues that there are grounds to vacate the award because the arbitrator [erred] when he awarded punitive damages at a 15 to 1 ratio because this exceeds a single-digit ratio. . . . [E]ven if this were an error in law, it is not grounds to vacate the arbitration award under California law because the Court may not set aside an arbitration award even if the arbitrator made an error of law. . . . Further, the 15 to 1 ratio is not an error in law because the Courts eschew 'rigid numerical limits' to awards of punitive damages. [(See *Simon v. San Paolo U.S. Holding Co., Inc.* (2005) 35 Cal.4th 1159, 1171–1172.)] The due process clause of the Fourteenth Amendment to the United States Constitution places limits on *state courts'* awards of punitive damages. [(*Id*. at p. 1171, italics added.)] The imposition of 'grossly excessive or arbitrary' awards is constitutionally prohibited, for due process entitles a tortfeasor to fair notice not only of the conduct that will subject the tortfeasor to punishment, but also of the severity of the penalty that a State may impose. [(*Ibid.*)] In making this determination, the Courts eschew rigid numerical limits. [(*Id*. at pp. 1171–1172.)] Instead, Courts engage in a three factor weighing analysis that considers the nature and effects of the defendant's tortious conduct and the *state's* treatment of comparable conduct in other contexts. This includes the following: [¶] (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by

the jury and the civil penalties authorized or imposed in comparable cases. [(*Simon v. San Paolo U.S. Holding Co., Inc.*, *supra*, 35 Cal.4th at p. 1172, italics added.)]"

The superior court continued: "With regards to the single-digit ratio, special justification is required to support an award of punitive damages when the ratio between the punitive damages award and the plaintiff's actual or potential compensatory damages is significantly greater than 9 or 10 to 1. [(*Simon v. San Paolo U.S. Holding Co., Inc.*, *supra*, 35 Cal.4th at p. 1182.)] Accordingly, the arbitrator's decision to award punitive damages at a 15 to 1 ratio to the compensatory damages is not [an] . . . error in law unless it could not be supported by findings under the three factor weighing analysis described above. Since the Court may not review the merits of the controversy, the validity of the arbitrator's reasoning, or the sufficiency of the evidence in making its decision whether to vacate the award, this is not a basis to vacate the award."

Similarly, in issuing its tentative order on Travelers's petition to vacate, modify, or correct the arbitration award, the federal district court, applying the manifest disregard standard, addressed the validity of the 15-to-1 ratio and concluded it was not excessive: "Mave obtained in punitive damages an award that was fifteen times more than the $161,939 it recovered in compensatory damages. . . . The arbitrator found that [Travelers's] 'willful and reprehensible' conduct justified a 'significant multiplier.' . . . Travelers contends that the arbitrator utilized an 'unconstitutionally high ratio' with the intent of 'giv[ing] Mave a windfall of punitive damages, in manifest disregard of the limits the Due Process Clause places on such awards.' . . .

"'Exemplary damages must bear a "reasonable relationship" to compensatory damages . . . .' *BMW of* [*North America*]*, Inc. v. Gore*, 517 U.S. 559, 580 (1996). However, 'there are no rigid benchmarks that a punitive damages award may not surpass.' [*State Farm Mut. Automobile Ins. Co.* v.] *Campbell*, 538 U.S. [408, 425 (2003)]. '[T]he notion that the constitutional line is marked by a simple mathematical formula, even one that compares actual and potential damages to the punitive award,' has been routinely dismissed. *Gore*, 517 U.S. at 582. Therefore, 'ratios greater than those [the Supreme Court has] previously upheld may comport with due process where a particularly

28

egregious act has resulted in only a small amount of economic damages.' *Campbell*, 538 U.S. at 425. The propriety of a punitive damages award ultimately turn[s] on 'the facts and circumstances of the defendant's conduct and the harm to the plaintiff.' *Id*.

"In the context of this case, Travelers's conduct, and the harm it caused Mave, render the arbitrator's imposition of a 15-to-1 ratio appropriate. As the arbitrator noted, [Travelers's] delay in reimbursing Mave for its equipment loss 'place[d] an unreasonable burden on [Mave].' . . . Because Travelers eventually reimbursed Mave its equipment loss, the arbitrator properly found that Mave sustained no compensatory damage in this regard. . . . But Travelers's dilatory conduct, which 'appear[ed] targeted to Mave,' harmed Mave by depleting its financial resources and besmirching its reputation. . . . Such egregious conduct warrants the punishment and deterrence that a 15-to-1 ratio imposes.

"Travelers's dilatory conduct also extended to the inventory valuation process. Travelers hired Stoner[ & Co.] to appraise Mave's inventory losses following the fire. . . . The arbitrator found that: [¶] 'Stoner . . . took a hand count of each inventory item and priced the replacement cost value of the inventory loss. It was a very thorough assessment of the inventory. Stoner received available backup, and created a full inventory with verified pricing information, and on 12/5/06 sent a letter to [Jim] DeBaca[, Travelers's claims examiner,] confirming completion in October which contained Stoner's assessment of the actual cash value of the loss as $1,971,923.17. . . .'

"DeBaca was satisfied with Stoner's report but later commissioned [Jim] Kinsel to revalue Mave's inventory loss. . . . Kinsel 'micro-analyzed simple issues . . . mis-analyzed the costs of labels,' and spend over twenty months redoing what Stoner had already done. . . . This protracted investigation caused Mave to 'los[e] goodwill with its suppliers because of late payments, and los[e its] placement positions in [Albertson's, K-Mart, Pavilions, Ralph's and Stater Brothers] because it could not keep up with product demands.' . . . Eventually, Mave had to 'sell off [a] part of [its] company to meet financial obligations, retain clients, and recover those who departed due to lack of service.' . . .

"However, Mave only received '[t]he shortfall between the amount [Travelers] paid and the policy limit' in compensatory damages. . . . Considering that 'DeBaca acted in

29

a[n] . . . unreasonable manner, against the interests of [Mave], at a time when he had reasonable information [from] his own agent, and was aware of the impact of the fire loss on [Mave's] continuing operations' . . . , a compensatory award of only the Policy limit is not substantial. When compensatory damages are low, a high punitive damages award is justifiable. *See* [*Campbell*, *supra*], 538 U.S. at 425. The Court concludes, therefore, that the 15-to-1 ratio of punitive-to-compensatory damages does not rise to the level of manifest disregard of the law in this instance."[7]

We agree with the analysis of both the superior court and the federal district court in concluding that the arbitrator's use of a 15-to-1 ratio in calculating punitive damages is not the type of legal error—if it was an error at all—that permits the vacatur of the arbitration award under the CAA.

Travelers asserts that the due process clause of the 14th Amendment of the United States Constitution limits an arbitrator's award of punitive damages. In *Shahinian v. Cedars-Sinai Medical Center* (2011) 194 Cal.App.4th 987 (*Shahinian*), our colleagues in Division Eight of this district rejected an attack on an arbitrator's award of punitive damages, saying: "Here, the agreement gave the arbitrator broad authority to grant remedies available in court, and made no reference to punitive damages or to any limitation on the amount of such an award. If the punitive damages award *was* excessive, the arbitrator's error would be no different from other errors of law, which are generally not reviewable 'whether or not such error appears on the face of the award and causes substantial injustice to the parties.' . . . Moreover, where the arbitrator has made a legal error "'in either determining the appropriate law or applying it,"' the parties may obtain court review of the merits 'only if the arbitration agreement *expressly provided* that the

---

[7] By its own terms, the federal district court's tentative order was to become a final order on September 11, 2012—14 days after it was issued, provided there were no objections. Mave filed its motion for reconsideration in the federal district court on September 10, 2012—one day before the tentative order would have become final.

arbitrator's errors of law were reviewable in court.' . . . '[T]o take themselves out of the general rule that the merits of the award are not subject to judicial review, the parties must clearly agree that legal errors are an excess of arbitral authority that is reviewable by the courts.' There was no such agreement here." (*Id*. at pp. 1006–1007, citations omitted.)

Division Eight then addressed the defendant's contention that the award of punitive damages violated the due process clause of the United States Constitution, explaining: "[D]efendant [makes] the claim that the award violates public policy . . . because the punitive damages awarded allegedly exceed constitutional limits. And indeed the due process clause of the Fourteenth Amendment to the federal Constitution *does* impose substantive limits on a *state's* imposition of punitive damages, preventing 'grossly excessive' awards. . . . But this is not a case where the state, through its judicial system, has imposed a 'grossly excessive' award of punitive damages that constitutes 'an arbitrary deprivation of property.' . . . This was a private arbitration that the parties voluntarily agreed would be 'final and binding.'

"The point is clearly stated in *Rifkind & Sterling, Inc. v. Rifkind* (1994) 28 Cal.App.4th 1282 (*Rifkind*). In *Rifkind,* the party against whom the arbitrator assessed punitive damages argued that the due process clause requires some measure of judicial review of the size of and basis for a punitive damage award . . . . The court rejected this notion, observing that the 'fundamental fallacy' in the argument was the premise that due process requires judicial review of private arbitral awards of punitive damages: 'That clause applies only to state action. . . . [¶] The arbitration in this case, however, was not state action. It was a private proceeding, arranged by contract, without legal compulsion. . . . Before its confirmation, the resulting award possessed the legal status of a private contract. . . . Consequently, the arbitration and award themselves were not governed or constrained by due process, including its elements applicable to judicial proceedings to impose punitive damages.'" (*Shahinian*, *supra*, 194 Cal.App.4th at p. 1007, citations omitted.)

*Shahinian* also noted that the Court of Appeal in *Rifkind* "rejected the notion that judicial review is constitutionally mandated when confirmation of the arbitration award is

sought (a proceeding that *does* constitute state action). The court [in *Rifkind*] pointed out that California's statutory procedures provide the safeguards traditionally required, namely notice and a hearing, and in addition provide for judicial review '"in circumstances involving serious problems with the award itself, or with the fairness of the arbitration process." . . .' . . . The court further observed that only a limited degree of state action is involved in confirming an arbitration award: 'The state does not impose the award, or mark out its criteria. It only allows the contracting contestants to secure enforcement of their own bargain.'" (*Shahinian*, *supra*, 194 Cal.App.4th at p. 1007, fn. 16, citation omitted.) "Private arbitration . . . really is private; and since constitutional rights are in general rights against government officials and agencies rather than against private individuals and organizations, the fact that a private arbitrator denies the procedural safeguards that are encompassed by the term 'due process of law' cannot give rise to a constitutional complaint." (*Elmore v. Chicago & Illinois Midland Ry.* (7th Cir. 1986) 782 F.2d 94, 96; accord, *Federal Deposit Ins. Corp. v. Air Florida Sys., Inc.* (9th Cir. 1987) 822 F.2d 833, 842, fn. 9 ["The arbitration involved here was private, not state, action; it was conducted pursuant to contract by a private arbitrator. . . . [W]e do not find in private arbitration proceedings the state action requisite for a constitutional due process claim.]; *U.S. v. American Soc. of Composers, Authors & Pub.* (S.D.N.Y. 1989) 708 F.Supp. 95, 96–97 [court's approval of arbitration as a means of resolving parties' disputes is not state action].)

Nor does the confirmation of an arbitration award constitute state action. "When arbitrators issue awards, they do so pursuant to the disputants' contract—in fact the award is a supplemental contract obligating the losing party to pay the winner. The fact that the courts enforce these contracts, just as they enforce other contracts, does not convert the contracts into state or federal action . . . ." (*Smith v. American Arbitration Ass'n, Inc.* (7th Cir. 2000) 233 F.3d 502, 507; accord, *Davis v. Prudential Securities, Inc.* (11th Cir. 1995) 59 F.3d 1186, 1190–1193 [judicial confirmation of arbitration award granting punitive damages is not state action]; *id.* at p. 1191 ["we agree with the numerous courts that have held that the state action element of a due process claim is absent in private arbitration

32

cases"]; *MedValUSA Health Programs, Inc. v. MemberWorks, Inc*. (2005) 273 Conn. 634, 640–652, 663 [872 A.2d 423, 428–435, 441] [judicial confirmation of arbitration award granting no compensatory damages and $5 million in punitive damages did not violate due process because confirmation of award is not state action]; *Cremin v. Merrill Lynch Pierce Fenner & Smith, Inc.* (N.D.Ill. 1997) 957 F.Supp. 1460, 1465–1470 [arbitration proceeding and confirmation of arbitration award do not constitute state action]; see also *Smith v. American Arbitration Ass'n, Inc.*, *supra*, 233 F.3d at p. 507 [rejecting equal protection challenge to arbitration award because neither arbitration nor judicial confirmation of award involves federal or state action].)

*Shahinian* acknowledged that in *Moncharsh v. Heily & Blase*, *supra*, 3 Cal.4th 1, the Supreme Court "expressly stated that there may be 'limited and exceptional circumstances justifying judicial review of an arbitrator's decision,' such as 'those in which granting finality to an arbitrator's decision would be inconsistent with the protection of a party's statutory rights,' but that '[w]ithout an *explicit legislative expression* of public policy, . . . courts should be reluctant to invalidate an arbitrator's award on this ground.' . . . [¶]  [The] defendant [in *Shahinian*] maintain[ed] that '[i]t cannot be true that arbitrators have unlimited power to award punitive damages,' and that '[a]t some point, an award is so arbitrary and so oppressive that it is both irrational and contravenes public policy.'" (*Shahinian*, *supra*, 194 Cal.App.4th at p. 1008, italics added.)  In response, the Court of Appeal stated:  "We find nothing in the award here suggests this is such a case.  The ratio of punitive to compensatory damages is just over 1.22 to 1.  In *Roby v. McKesson Corp.* (2009) 47 Cal.4th 686, the court held that a one-to-one ratio was the federal constitutional limit, but that was 'base[d] . . . on the specific facts of [the *Roby*] case.' . . . In short, every case depends on its facts, and we are not at liberty to review the facts underlying an arbitration award absent 'limited and exceptional circumstances.'" (*Shahinian*, at p. 1008, citations omitted.)

Nor does the present case involve "limited and exceptional circumstances justifying judicial review of an arbitrator's decision." (*Moncharsh v. Heily & Blase*, *supra*, 3 Cal.4th at p. 32.)  As previously discussed, the 15-to-1 ratio of punitive damages to

compensatory damages does not constitute the type of legal error—assuming it was error—that warrants vacatur under the CAA. Further, because the parties did not designate the substantive law of a particular jurisdiction to govern the arbitration, the arbitrator was authorized by JAMS rule 24(c) to award relief that is "just and equitable" and in accordance with "the rules of law and equity." In construing the comparable rule of the American Arbitration Association (AAA), which authorizes "any remedy or relief that the Arbitrator deems just and equitable," our Supreme Court stated: "The AAA rule [is] . . . 'a broad grant of authority to fashion remedies' . . . and [gives] the arbitrator 'broad scope' in choice of relief." (*Advanced Micro Devices, Inc. v. Intel Corp.*, *supra*, 9 Cal.4th at pp. 383–384 [interpreting AAA rule 43(a)].) In this case, the award of punitive damages was not unjust or inequitable, nor was it beyond the arbitrator's broad authority to fashion remedies or the broad scope accorded him in choosing relief. And "[n]othing in the [parties'] arbitration [stipulations], . . . [the] rules adopted . . . , or the . . . reference [to arbitration] indicates an intent to place any special restrictions on the arbitrator's discretion to fashion remedies." (*Id.* at p. 384.)

Finally, we deny Mave's motion to impose sanctions for a frivolous appeal. "[A]n appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.) Applying that standard, the appeal is not frivolous.

In sum, the procedural provisions of the CAA, not the FAA, govern our review of the arbitration award. Under the CAA, an arbitrator's errors of law, if any, are not reviewable unless the parties "clearly agree that legal errors are an excess of arbitral authority that is reviewable by the courts." (*Cable Connection, Inc. v. DIRECTV, Inc.*, *supra*, 44 Cal.4th at p. 1361.) The parties in this case did not so agree.

### III

### DISPOSITION

The order granting plaintiff's motion to confirm the arbitration award and the judgment entered in plaintiff's favor are affirmed.

CERTIFIED FOR PUBLICATION.


MALLANO, P. J.

I concur:


CHANEY, J.

Rothschild, J., concurring in the judgment:

I agree that the superior court did not abuse its discretion by declining to issue a stay. I also agree that the judgment should be affirmed, but I write separately because my reasoning differs from the majority's.

Apart from the stay, the threshold issue is whether the proceedings in the superior court to confirm, vacate, or modify the award should have been governed by the California Arbitration Act (CAA) or the Federal Arbitration Act (FAA). Under *Valencia v. Smyth* (2010) 185 Cal.App.4th 153, 174, "the procedural provisions of the CAA apply in California courts by default," and "the FAA's procedural provisions . . . do not apply unless the contract contains a choice-of-law clause expressly incorporating them." (Italics omitted.)

The superior court was therefore correct to apply the CAA unless the parties expressly agreed that the FAA would govern. But the parties did expressly agree in writing to be bound by the JAMS Arbitration Rules and Procedures, including rule 25, which provides as follows: "Proceedings to enforce, confirm, modify or vacate an Award will be controlled by and conducted in conformity with the Federal Arbitration Act, 9 U.S.C. Sec 1 et seq. or applicable state law." The rule thus calls for application of both federal and state law. Unfortunately, the rule does not say which law applies in which circumstances, and there is no federal or state case law (inside or outside California) interpreting it.

In my view, JAMS rule 25 should be interpreted to mean that proceedings to enforce, confirm, modify, or vacate an award are to be governed by whatever state or federal law would apply by default. That is, state procedural law will apply in state court, federal procedural law will apply in federal court, and insofar as the proceedings call for the application of substantive law, the governing law shall be selected according to whatever choice-of-law rules would otherwise be applicable (e.g., a California court will apply California choice-of-law rules).

Travelers' only argument against this interpretation is that, so interpreted, JAMS rule 25 is superfluous because it merely calls for application of the same legal

rules that would apply if rule 25 itself did not exist. I agree that that is the effect of my interpretation, but I do not believe that it renders my interpretation implausible, particularly in the absence of a more plausible alternative. JAMS rule 25 reflects that, for purposes of proceedings to enforce, confirm, modify, or vacate an award, JAMS (and any parties who agree to the JAMS rules) intended to leave the law as it is. The rule provides an answer to the question of which law to apply in such proceedings, and the answer is: the same law that would apply by default.

Travelers argues, to the contrary, that JAMS rule 25 means that the FAA should apply if the dispute arises from a transaction in interstate commerce, and state law should apply otherwise. The concept of interstate commerce, however, is exceptionally broad and malleable. (See, e.g., *Wickard v. Filburn* (1942) 317 U.S. 111, 118-129.) It would be anomalous for a JAMS rule to compel state courts throughout the country, in a large number (and perhaps an overwhelming majority) of arbitration cases, to adhere to procedures that were foreign to those courts. And if JAMS had intended to effect such a sweeping imposition of federal procedural law on state courts, it is unlikely that JAMS would have used a rule as opaque and ambiguous as rule 25 to accomplish that purpose.[1]

I conclude that the most plausible interpretation of JAMS rule 25 is that it calls for the application of state procedural law in state courts and federal procedural law in federal courts. The trial court therefore was correct in choosing to apply the CAA.

The only remaining issue is whether the arbitrator exceeded his powers. In calculating the amount of attorney fees to award as damages on the bad faith claim under *Brandt v. Superior Court* (1985) 37 Cal.3d 813 (*Brandt*), the arbitrator used a percentage of the sum of the breach of contract damages and the bad faith punitive damages, rather

---

[1] Regardless of whether I am right about the proper interpretation of JAMS rule 25, JAMS might wish to consider revising the rule so as to clarify when the FAA or, alternatively, state law should govern proceedings to enforce, confirm, modify, or vacate an award.

2

than a percentage of the contract damages alone. The arbitrator's approach appears to be legally erroneous (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 807-812), and no party advocated it. To the contrary, both parties' submissions to the arbitrator calculated the fees as a percentage of the contract damages alone.

Arbitrators' awards are not reviewable for mere legal error, but Travelers argues that the arbitrator exceeded his powers, within the meaning of Code of Civil Procedure section 1286.2, subdivision (a)(4), and section 1286.6, subdivision (b), by calculating the fee award in a manner different from the method proposed by both parties. I disagree. It is undisputed that, pursuant to the parties' agreement, the arbitrator had the power to award *Brandt* fees. The parties did not restrict that power by jointly adopting a particular calculation method in their submissions. If, for example, the submissions of both parties had advocated a calculation method that was legally (or even mathematically) incorrect, their submissions would not have deprived the arbitrator of the power to issue a legally (and mathematically) correct award.

In arguing to the contrary, Travelers relies upon *Totem Marine Tug & Barge v. North Am. Towing* (5th Cir. 1979) 607 F.2d 649 (*Totem Marine*), which the Supreme Court cited with approval in *Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 382. In *Totem Marine*, the arbitrators awarded "damages for charter hire" (i.e., the lost rental value of a boat) even though the claimant expressly conceded in its written submissions "that charter hire was not an issue in the arbitration." (*Totem Marine*, *supra*, 607 F.2d at p. 651.)

*Totem Marine* is distinguishable because it is undisputed that *Brandt* fees *were* an issue in the arbitration in this case. In *Totem Marine*, the claimant did not merely concede that a particular method of calculating the amount of damages for charter hire was correct; rather, the claimant expressly conceded "that charter hire was not an issue in the arbitration" at all. (*Totem Marine*, *supra*, 607 F.2d at p. 651.) Here, because *Brandt* fees were undeniably an issue in the arbitration, the arbitrator had the power to award them and thus had the power to calculate the amount to be awarded, even if his method of

3

calculation differed from the method advocated by both parties. And the legal correctness of the arbitrator's chosen method of calculation is not judicially reviewable.

For all of the foregoing reasons, I agree that the judgment of the superior court should be affirmed, and I therefore concur in the judgment.


ROTHSCHILD, J.