Filed 5/1/23  Golden Fish v. FAA Beverly Hills BMW CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| GOLDEN FISH, LLC et al., | B314929 |
| Plaintiff and Appellant, | |
| v. | (Los Angeles County Super. Ct. No. 20STCV12065) |
| FAA BEVERLY HILLS BMW et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Holly J. Fujie, Judge.  Affirmed.

Law Offices of Pavel Y. Kouprine and Pavel Y. Kouprine for Plaintiff and Appellant.

Manning, Leaver, Bruder & Berberich, Kimberly L. Phan and Timothy D. Robinett for Defendants and Respondents.

Plaintiffs Kirill Kiryanov and Golden Fish LLC (collectively, Kiryanov) purchased a BMW X7 from defendants FAA Beverly Hills, Inc. dba Beverly Hills BMW and BMW of North America LLC (collectively, Dealer) in June 2019. The parties encountered some difficulty in getting the vehicle titled, because Kiryanov wanted it delivered to Nevada, but did not wish to register the vehicle in that, or any, state. Eventually, at the end of September 2019, Dealer obtained a certificate of title (without registration) from California, and forwarded it to Kiryanov. Although Kiryanov was satisfied with this document, he brought suit against Dealer, seeking statutory penalties and damages for the delay. The matter proceeded to arbitration, where the arbitrator found that Kiryanov entirely lacked credibility, and he was wholly responsible for any delays in Dealer's attempts to title the vehicle. The trial court confirmed the award and entered judgment in favor of Dealer. On Kiryanov's appeal, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On appeal, we must view the record in the light most favorable to the judgment, so we set out the facts established at the arbitration. (*Siegel v. Prudential Ins. Co.* (1998) 67 Cal.App.4th 1270, 1273.)

1. ***The Purchase and Title Dispute***

In early June 2019, Kiryanov purchased the car from Dealer via telephone, e-mail, and FedEx; nothing was done in person. It was a cash transaction. Kiryanov claimed to be located in Nevada while Dealer was in California. Initially, Dealer sent Kiryanov a draft purchase agreement containing California sales tax and registration fees. Kiraynov rejected this,

2

stating that he wanted the vehicle titled in Nevada and therefore would not have to pay California taxes.

Dealer retained an agent in Nevada for the purpose of getting the car titled there. In the meantime, Kiryanov obtained a cashier's check for the vehicle, tendered it to Dealer, and arranged an auto transport service to pick up the car and bring it to Nevada. Kiryanov placed the delivered car in a storage facility.

Kiryanov had wanted a "title only" purchase with the vehicle titled in Nevada. Dealer's agent in Nevada quickly found this to be impossible. Before a vehicle can be titled in Nevada, it must be registered with the Nevada Department of Motor Vehicles, and all taxes and fees paid. But registering the car in Nevada was something Kiryanov could not, and did not wish to, accomplish.[1]

Kiryanov's emails to Dealer became more strident, as he demanded Dealer provide him with title to the vehicle. He sought reimbursement for over $25,000 in daily rental charges for a comparable car.

"In an apparent effort to put the matter to rest, in early September 2019, and despite [Kiryanov's] desire for Nevada ownership, [Dealer] finally arranged for a 'Title Only' California

---

[1] Kiryanov asserted that he twice walked into the Las Vegas DMV to have the car registered but was turned away, because the documents he had been provided from Dealer were "incomplete, inaccurate, and improper." Kiryanov did not live in Nevada, but in Copenhagen, Denmark. The arbitrator found Kiryanov to "lack any credibility." He specifically found that Kiryanov "did not personally visit the Nevada DMV office to receive the guidance needed to complete the transaction."

DMV document to be issued. The California title was delivered to [Kiryanov] in late September."[2]

Around September 2019, Kiryanov sold the vehicle to a purported third party; at the arbitration, he could testify to no knowledge about the buyer other than that it was known as "Elite." He did not know the vehicle's final destination.

## 2. *The Action*

On March 25, 2020, Kiryanov filed this action against Dealer, alleging causes of action for (1) breach of implied warranty of title;[3] (2) failure to deliver title in violation of Vehicle Code section 5753; (3) fraud; and (4) intentional infliction of emotional distress. The complaint alleged Kiryanov had made several demands for title but Dealer never intended to deliver title, and delayed doing so until he complained to the California DMV.[4]

---

[2] Vehicle Code section 4452 provides for issuance of a certificate of title without registration under limited circumstances, including when a certificate of nonoperation has been filed, indicating that the vehicle will not be operated in California without first surrendering the certificate of ownership, applying for registration and paying all fees. (Veh. Code, §§ 4452, subd. (b), 4604.)

[3] This cause of action cited to the federal Magnuson-Moss Warranty—Federal Trade Commission Improvement Act. (15 U.S.C. §§ 2301 et seq.)

[4.] Kiryanov also alleged that he timely cancelled a maintenance contract on the vehicle, but Dealer did not give him a refund. Dealer took the position that an email cancellation was not sufficiently "in writing," as required by the terms of the

4

On July 10, 2020, Dealer moved to compel arbitration, on the basis of an arbitration clause in the purchase agreement requiring "[a]ny claim or dispute, whether in contract, tort, statute or otherwise . . . which arises out of or relates to [Kiryanov's] . . . purchase or condition of this vehicle, this contract, or any resulting transaction or relationship" to be submitted to binding arbitration pursuant to the Federal Arbitration Act (9 U.S.C. §§ 1 et seq., FAA).

On September 4, 2020, the court granted the motion and stayed the action pending completion of the arbitration.

3.      ***The Arbitrator's Decision***

The only cause of action at issue in the current appeal is Kiryanov's claim for violation of Vehicle Code section 5753, which imposes obligations on various parties regarding delivery of a vehicle's certificate of ownership. We therefore limit our discussion of the arbitrator's decision to that cause of action.

Before we turn to the statute, however, it is necessary to address how completely the arbitrator rejected the facts as Kiryanov presented them. In multiple respects, the arbitrator found Kiryanov to lack credibility. The arbitrator observed that on cross-examination his "testimony consistently led to a dead end from which he could find no way out. In many circumstances, his oral testimony was counter to the

---

agreement. Kiryanov eventually prevailed on this claim at the arbitration, receiving an award in the amount of $840, plus prejudgment interest. Dealer immediately paid. This portion of the arbitration award is not at issue on appeal.

documentary evidence."[5]  The arbitrator inferred that after Kiryanov had requested all communication with Dealer to be conducted by email, none of the emails purportedly sent by Kiryanov had originated with him.  The arbitrator concluded that Kiryanov was a straw man purchaser for another entity who never intended to title or register the vehicle in the United States.[6]  The arbitrator found "that if a fraud was perpetrated by

---

[5]  To take but a single example out of many, there was testimony concerning Kiryanov's "wife."  When exchanging emails prior to the purchase, Dealer had asked for a copy of Kiryanov's driver's license and insurance ID card; Kiryanov responded with an email transmitting, "ID's for Kirill and wife, she is on the insurance (if needed)."  Kiryanov's supposed wife was Renata Koncsag.  Dealer wrote back, "Since he does not have a lic[ense] then please add that Renata is the driver since I guess she'll be driving the car."  Kiryanov responded with an email saying, "You are the best!!!" and attaching a form identifying himself and Renata – both with the same address – as 50 percent users of the car.  At the arbitration hearing, it was revealed that the address they both claimed was a "non-governmental mailbox location, without any associated residence."  Kiryanov testified that Konscag was merely "a friend" and he did not know where she lived.

[6.]  The vehicle was not to be exported.  Dealer could not sell cars outside its exclusive sales territory of North America, and there would be financial penalties if it did so.  Dealer therefore required Kiryanov to sign, as part of the purchase agreement, a document representing, "The vehicle is leased or purchased for me for my own use within North America.  I do not intend to export the vehicle outside North America or transfer the vehicle to any other party."  The agreement also provided for $15,000 in

6

anyone in this case, [Kiryanov], or [his] principal, was the perpetrator."

We now turn to the statutory cause of action. Vehicle Code section 5753 provides, in pertinent part, as follows:

"(a) It is unlawful for any person to fail or neglect properly to endorse, date, and deliver the certificate of ownership and, when having possession, to deliver the registration card to a transferee who is lawfully entitled to a transfer of registration.

"(b) Except when the certificate of ownership is demanded in writing by a purchaser, a vehicle dealer licensed under this code shall satisfy the delivery requirement of this section by submitting appropriate documents and fees to the department for transfer of registration in accordance with [applicable law].

"(c) (1) Within 15 business days after receiving payment in full for the satisfaction of a security interest and a written instrument signed by the grantor of the security interest designating the transferee and authorizing release of the legal owner's interest, the legal owner shall release its security interest and mail, transmit, or deliver the vehicle's certificate of ownership to the transferee who, due to satisfaction of the security interest, is lawfully entitled to the transfer of legal ownership."[7]

Subdivision (d) contains further details regarding the certificate of ownership required by subdivision (c). Subdivision

---

liquidated damages if the car were to be exported outside of North America within 12 months of purchase.

[7] Subdivision (c)(2) deals with leases. Kiryanov agrees that it has no application to this case.

(e) then provides for a daily statutory penalty for owners who fail to comply with subdivisions (c) and (d).

Alleged violation of subdivision (c) is at the heart of Kiryanov's case, because he sought the statutory penalties that arise from violation of the 15-day time limit associated with this subdivision, as well as other damages he purportedly suffered due to the delay.

The arbitrator concluded subdivision (a) provided no relief, as the section required provision only of documents in Dealer's possession, and Dealer had no such documents.[8] The arbitrator further found that Dealer "did provide all of the evidence of ownership of the vehicle to [Kiryanov] well within the time required, so the Claim under this subsection fails."

As to subdivision (b), the arbitrator concluded it did not apply. If Kiryanov had wanted the vehicle titled in California, Dealer could have satisfied its statutory obligations by submitting the required materials to the California DMV. While Kiryanov disagrees with the arbitrator's resolution of the factual issue that he demanded Nevada title, he agrees that he has no viable claim under subdivision (b).

Subdivision (c), by its terms, relates to the transfer of title on satisfaction of a security interest. The arbitrator found it did not apply, stating: "This section relates to lienholder's' rights. Since [Kiryanov] represented this transaction to be all cash and no lien has ever been recorded or asserted, this section does not apply. If, arguendo, the language is tortured to mean that once

---

[8] The arbitrator may have misinterpreted subdivision (a), but subdivision (a) does not apply to this case in any event. Because Kiryanov was not entitled to a transfer of registration, subdivision (a) is of no help to him.

the dealer is paid for the vehicle, ownership documents must be transmitted to the payor, the evidence is clear that [Dealer] transmitted every document and/or copies thereof in its possession to [Kiryanov] within the time required.  By making specific demands regarding where the vehicle was to be titled, [Kiryanov] relieved [Dealer] of any obligation to arrange for California Title (aka 'ownership documents').  Nevertheless, knowing that the transaction was becoming stale and not wanting the record ownership of the vehicle to remain in the purgatory of the process, [Dealer] later ordered a California title.  This begs the question as to whether it wouldn't have been simpler for [Dealer] just to have done so to make sure it had complied with applicable law?  In retrospect, I believe the answer is 'Yes.'  However, as a consumer service business, it was reasonable for [Dealer] to try to satisfy its customer's desires, even though the efforts on both sides were poorly executed.  Subsection c does not apply and, consequently, [Kirynov's] prayer under this statute is DENIED."

4.    *Confirmation Proceedings*

Kiryanov moved to vacate the award; Dealer moved to confirm it.  After briefing and a hearing, the trial court confirmed the award.

Specifically, the court applied the FAA standard, rather than the California Arbitration Act (Code Civ. Proc., §§ 1280 et seq., CAA).  Under the FAA standard, an arbitration may be vacated where the arbitrator acts in "manifest disregard" of the law.  " 'The manifest disregard standard requires a party seeking vacatur to prove that the arbitrator "was fully aware of the existence of a clearly defined governing legal principle but refused to apply it, in effect, ignoring it." ' " (*JP-Richardson, LLC*

9

*v. Pacific Oak SOR Richardson JV, LLC* (2021) 65 Cal.App.5th 1177, 1188 (*JP Richardson*).)

Pursuant to that standard, the trial court found no manifest disregard. Kiryanov had also suggested the arbitrator exceeded the scope of the arbitration by addressing the issue of registering the vehicle, as the arbitration should have been limited to Dealer's failure to obtain title. The trial court disagreed, holding that, since the car could not be titled in Nevada without registration, registration "was an essential part of the title question." The trial court therefore confirmed the award.

Kiryanov filed a timely notice of appeal.

### *DISCUSSION*

**1.** **Standard of Review**

We review de novo a trial court judgment confirming an arbitration award. (*Mave Enters. v. Travelers Indem. Co.* (2013) 219 Cal.App.4th 1408, 1422 (*Mave*).)

The parties agree that the FAA "manifest disregard" standard of arbitral review applies to this case. We accept the concession without reaching the issue.[9] To establish manifest

---

[9]    The "manifest disregard" standard is a procedural, rather than substantive, part of the FAA. (*Mave, supra,* 219 Cal.App.4th at p. 1423, fn. 5.) In accordance with choice of law principles, we would apply the procedural provisions of the CAA in the absence of an agreement otherwise. However, if the parties, in their agreement, *expressly* agreed to incorporate the FAA's procedural provisions, we would accept that limitation. (*Victrola 89, LLC v. Jaman Properties 8 LLC* (2020) 46 Cal.App.5th 337, 345-346.) Here, the parties' arbitration clause provided, "Any award by the arbitrator shall be in writing

disregard, " 'the evidence must establish "that the arbitrator (1) knew of the relevant legal principle, (2) appreciated that this principle controlled the outcome of the disputed issue, and (3) nonetheless willfully flouted the governing law by refusing to apply it." ' " (*JP Richardson, supra,* 65 Cal.App.5th at p. 1188.) An award under the FAA is not reviewable for factual errors. (*Martinique Prop., LLC v. Certain Underwriters at Lloyd's* (9th Cir. 2023) 60 F.4th 1206, 1208.)

**2.** ***The Arbitrator Did Not Manifestly Disregard the Law***

Kiryanov argues the arbitrator manifestly disregarded the law – specifically, Vehicle Code section 5753, subdivision (c). Taking the language of the arbitrator's decision entirely out of context, Kiryanov argues the arbitrator recognized that subdivision (c) applied and required Dealer to deliver the California certificate of title within 15 days. That the arbitrator nonetheless excused the Dealer from compliance is, according to Kiryanov, a manifest disregard of the law.

We have quoted the arbitrator's decision regarding subdivision (c) above. The arbitrator first held that subdivision "does not apply," as it relates only to lienholders. Second, the arbitrator stated, "If, arguendo, the language is tortured to mean that once the dealer is paid for the vehicle, ownership documents must be transmitted to the payor, the evidence is clear that [Dealer] transmitted every document and/or copies thereof in its possession to [Kiryanov] within the time required." Third, the

---

and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act." Whether this language is sufficient to adopt the FAA's procedural provisions governing vacating and confirming arbitration awards is a question on which we express no opinion.

arbitrator held that the Dealer was "relieved of any obligation to arrange for California Title" because Kiryanov had demanded Nevada title. Fourth and finally, the arbitrator observed that the Dealer nevertheless obtained California title to remove the vehicle from "the purgatory of the process," and that, in retrospect, "it would have been simpler" for it to have done so from the start.

On appeal, Kiryanov brushes aside the arbitrator's first holding as mere "clerical error," which he argues should be "ignored." He then focusses on the second statement, wherein the arbitrator began, "If, arguendo, the language is tortured to mean that once the dealer is paid for the vehicle, ownership documents must be transmitted to the payor, . . ." Kiryanov turns this farfetched hypothetical on its head, and states, "The award accepts the meaning [of the statute] as 'to mean that once the dealer is paid for the vehicle, ownership documents must be transmitted to the payor . . . .'" The arbitrator's award did no such thing. The arbitrator held that the subdivision did not apply, because, by its terms, it pertained only to the release of secured interests, and the language would have to be "tortured" to have the meaning Kiryanov assigns to it.

Utilizing the manifest disregard test, Kiryanov argues the arbitrator "appreciated" that Vehicle Code section 5753, subdivision (c) applied to the case, but "nonetheless willfully flouted" it. The plain reading of the award is that the arbitrator recognized that subdivision (c), by its terms, did not apply. There was no manifest disregard.

Kiryanov's remaining arguments on appeal request us to reject the arbitrator's evaluation of the evidence in favor of his interpretation, despite providing no legal basis for such a review

12

and a record insufficient for us to do so. He also reasserts the argument that the issue of registration was outside the scope of the arbitration. We reject this argument on the same basis as did the trial court; the vehicle could not be titled in Nevada without registration, so the issues were intertwined.

### *DISPOSITION*

The judgment confirming the arbitration award is affirmed. Kiryanov shall pay Dealer's costs on appeal.

RUBIN, P. J.

WE CONCUR:

BAKER, J.

KIM, J.

13